STATE OF NORTH CAROLINA v. McKINNLEY JUNIOR CALLOWAY

No. 165A81

(Filed 2 June 1982)

**1. Homicide § 25.2— premeditation and deliberation—sufficiency of evidence**

The trial court properly denied defendant's motion to dismiss where there was plenary and substantial evidence which would permit the jury to draw reasonable inferences that defendant acted with premeditation and deliberation when he shot and killed his wife.

**2. Criminal Law § 86.2— examination of defendant concerning prior convictions proper**

The trial judge did not abuse his discretion by permitting the district attorney to cross-examine defendant about prior convictions where all the questions directed to the defendant were all related to convictions and specific acts and where the record failed to reveal that the district attorney acted on lack of information or that he acted in bad faith in so cross-examining.

**3. Criminal Law § 128.2; Jury § 6.4— "death qualification" of juror—comment by district attorney**

Where a juror made a statement that "I don't believe in just going out and killing people" while the district attorney was trying to "death qualify" the prospective juror during the *voir dire* and the district attorney replied, "Yes ma'am. That's what this trial is all about," there was nothing in the dialogue which would require the trial judge to declare a mistrial on his own motion.

**4. Homicide § 17.2— evidence of prior abuse of victim by defendant properly admitted—restoring witness's credibility**

Where defense counsel sought to impeach a State's witness by cross-examining him concerning the witness's shooting of defendant, the door was

opened for the witness to testify as to the reason for his actions so as to restore his credibility, and testimony by the witness of prior maltreatment by defendant of his wife, the victim, was competent.

**5. Homicide § 20.1 — photographs of victim and scene of crime properly admitted**

The trial court properly admitted a series of eleven photographs, nine of which showed the scene of the crime and two of which depicted the victim's wound, to illustrate the testimony of witnesses. Defendant's argument that the photographs were irrelevant since the cause. of death was uncontroverted was without merit.

**6. Criminal Law § 95.1 — denial of motion to strike answer — harmless error**

Where a witness testified that he had heard defendant say he was going to kill someone "three weeks before this — before he murdered his wife," the trial court erred in denying defendant's motion to strike the portion of the witness's answer, "before he murdered his wife." However, when compared with the overwhelming evidence of defendant's guilt, and when examined in the context of the witness's testimony, the error was found to be harmless.

APPEAL by defendant from *Lamm, J.,* at the 7 July 1981 Criminal Session of WILKES Superior Court.

Defendant was charged in a bill of indictment, proper in form, with the first-degree murder of his wife, Willa Wilborne Calloway.

The State offered evidence tending to show that defendant and his wife were separated and that she lived in the home of her father which was located a short distance from the home formerly occupied by her and defendant. On 11 January 1981 at approximately 2:30 p.m., defendant came to the residence of Willa's father, parked his automobile, and blew the horn. Willa asked her brother, Lawrence, to go with her to the automobile to give her husband a gift from their children. After Willa delivered the gift, defendant asked to speak to her alone and she refused. He then asked her to let the children come out to talk to him, but she declined to do so because the children were suffering with colds. Defendant repeated his request that she get into the car several times, and upon her repeated refusals, he finally told her to go back to the house. As Willa and her brother started across the road, defendant said to Willa, "I'm going to kill you." Lawrence turned and saw defendant stick a shotgun out the window, aim it at Willa, and pull the trigger. The victim was about five feet from the end of the gun barrel when the blast struck her in the back of the neck. Defendant drove away at a high rate of speed and was observed to look back as he reached a curve in the road.

Police officers were called to the scene and found the victim's body lying in the highway with her head pointed toward her father's dwelling and located about one foot from the edge of the road.

There was medical testimony to the effect that the victim died as a result of a gunshot wound in the back of her neck, and in the opinion of the expert witness, the shot was fired from about three and one-half feet away. The State also offered evidence tending to show that there had been a long history of marital difficulties between defendant and his wife, and that defendant had physically abused her on several occasions. On one occasion about six months prior to the shooting, he had held a butcher knife to his wife's throat and threatened to kill her.

Defendant testified and stated that on 11 December 1981 he had been drinking "white" liquor from 7:00 a.m. to 2:00 p.m. when he called his wife, who told him that she would send the children out to see him if he came to her father's home. Defendant stated that he normally carried his shotgun in the car, and on the day preceding the shooting, he had used it to shoot at a squirrel's nest. He did not recall reloading the single shot shotgun after firing at the nest. He further testified that when he arrived at his father-in-law's house on the day of the shooting, his wife refused to let him see his children because he had been drinking. She also told him that she was going to court and fix it so he would not be able to see the children at all. When his wife started to walk away, he reached into the back seat, obtained his shotgun, and pointed it at her in an attempt "to aggravate her." He pulled the hammer back thinking it was unloaded and "the gun went off." He fled because he was frightened.

Defendant also offered the testimony of James Redman, who testified that he saw defendant drinking "white" liquor on the morning before the shooting.

In rebuttal the State offered Officer Walsh, who testified that he apprehended defendant at about 4:10 p.m. on 11 December 1981 and at that time defendant walked and talked in a normal manner. He did not detect the odor of alcohol about defendant's person.

The jury returned a verdict of guilty of first-degree murder. Defendant appealed from a judgment imposing a sentence of life imprisonment.*

*Rufus L. Edmisten, Attorney General, by Ralf F. Haskell, for the State.*

*Cecil Lee Porter for defendant-appellant.*

BRANCH, Chief Justice.

[1] Defendant first assigns as error the trial judge's denial of his motion for directed verdicts made at the close of the State's evidence and at the close of all the evidence. He argues that there was not sufficient evidence of premeditation and deliberation to carry the case to the jury on the charge of first-degree murder.

When defendant elected to offer evidence after the denial of his motion to dismiss at the close of the State's evidence, he waived his motion to dismiss at the close of the State's evidence. We therefore only consider his motion to dismiss made at the close of all the evidence. G.S. 15-173; *State v. Jones*, 296 N.C. 75, 248 S.E. 2d 858 (1978).

In considering this assignment of error, we apply the familiar rule that upon a motion for nonsuit or dismissal all the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from it. *State v. Snead*, 295 N.C. 615, 247 S.E. 2d 893 (1978); 4 Strong's N.C. Index 3d, Criminal Law § 106. (1976). When so considered, if there is substantial evidence to support a finding that the offense has been committed and the defendant was the perpetrator of the offense, the motion for nonsuit should be denied. *State v. Thomas*, 294 N.C. 105, 240 S.E. 2d 426 (1978).

---

* The State announced at the beginning of the sentencing hearing that based upon its review of the evidence there was no evidence of any aggravating circumstances as enumerated in G.S. 15A-2000(e). The trial court concurred in the State's evaluation of the evidence and pronounced a minimum/maximum term of life imprisonment. Since the State failed to produce evidence of an aggravating circumstance in either the guilt determination phase or the sentencing phase, the trial court properly imposed a life imprisonment sentence without the intervention of the jury at the sentencing phase of the trial. *See State v. Johnson*, 298 N.C. 47, 79-80, 257 S.E. 2d 597, 620 (1979).

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Thomas, supra; State v. Davis,* 289 N.C. 500, 223 S.E. 2d 296, *death sentence vacated,* 429 U.S. 809, 50 L.Ed. 2d 69, 97 S.Ct. 47 (1976).

Since all of the evidence in this case shows that defendant intentionally shot deceased with a deadly weapon thereby proximately causing her death, we are here only concerned with whether the evidence was sufficient to permit, but not require, a jury to find that defendant acted with premeditation and deliberation.

Premeditation may be defined as thought beforehand for some length of time no matter how short. *State v. Corn,* 303 N.C. 293, 278 S.E. 2d 221 (1981); *State v. Thomas, supra; State v. Britt,* 285 N.C. 256, 204 S.E. 2d 817 (1974).

Deliberation means an intention to kill executed by the defendant in a "cool state of blood" in furtherance of a "fixed design to gratify a feeling of revenge or, to accomplish some unlawful purpose." *State v. Corn, supra; State v. Thomas, supra; State v. Perry,* 276 N.C. 339, 172 S.E. 2d 541 (1970); *State v. Faust,* 254 N.C. 101, 118 S.E. 2d 769, 96 A.L.R. 2d 1422, *cert. denied,* 368 U.S. 851, 7 L.Ed. 2d 49, 82 S.Ct. 85 (1961).

Premeditation and deliberation must ordinarily be proved by circumstantial evidence. Among the circumstances to be considered are: (1) want of provocation on the part of the deceased, (2) conduct and statements of the defendant before and after the killing, (3) threats made against the victim by defendant, (4) ill will or previous difficulty between the parties, and (5) evidence that the killing was done in a brutal manner. *State v. Potter,* 295 N.C. 126, 130-31, 244 S.E. 2d 397, 401 (1978); *State v. Thomas, supra; State v. Fountain,* 282 N.C. 58, 191 S.E. 2d 674 (1972).

Here the evidence, when considered in the light most favorable to the State, discloses a minimum of provocation on the part of the deceased. She was in the act of delivering a gift to defendant from their children and explained that the children could not come out to see him because of illness. After refusing to enter the automobile, she was told to go back to the house. As she turned to go to the house, she was shot in the back at close

range. Defendant came to the place where the victim lived armed with a shotgun, and after stating that he was going to kill her fired a shotgun at close range. There was substantial evidence of previous difficulty between the parties including previous separations, physical assaults on the victim by the defendant, and the threatened use of a deadly weapon upon the person of the victim by the defendant. We hold that there was plenary and substantial evidence which would permit the jury to draw reasonable inferences that defendant acted with premeditation and deliberation when he shot and killed his wife. The trial court properly denied defendant's motion to dismiss.

[2] Defendant next contends that the trial court erred by permitting the district attorney to examine him, over his objection, concerning prior convictions.

Defendant testified in his own behalf, and on cross-examination the district attorney asked him a series of questions concerning previous *convictions*.

It is well settled in this jurisdiction that when a defendant testifies in a criminal case he may be cross-examined concerning *convictions* of prior unrelated criminal offenses. He may also be impeached by cross-examination concerning prior specific criminal acts or specific reprehensible conduct. However, such cross-examination must be based upon information, and the questions must be asked in good faith. *State v. Williams,* 303 N.C. 142, 277 S.E. 2d 434 (1981); *State v. Small,* 301 N.C. 407, 272 S.E. 2d 128 (1980); *State v. Leonard,* 300 N.C. 223, 266 S.E. 2d 631, *cert. denied,* 449 U.S. 960, 66 L.Ed. 2d 227, 101 S.Ct. 372 (1980). It is equally well settled that a defendant may *not* be impeached on cross-examination by questions relative to whether he has been *arrested, accused,* or *indicted* for prior unrelated criminal offenses. *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174 (1971).

> Whether the cross-examination transcends propriety or is unfair is a matter resting largely in the sole discretion of the trial judge, who sees and hears the witnesses and knows the background of the case. His ruling thereon will not be disturbed without a showing of gross abuse of discretion.

*State v. Foster,* 293 N.C. 674, 239 S.E. 2d 449 (1977). *Accord State v. Clark,* 300 N.C. 116, 265 S.E. 2d 204 (1980).

In *State v. Clark, supra,* this Court considered the question of whether a district attorney acted in bad faith in conducting his cross-examination. In that case, defendant contended that the district attorney had before him an F.B.I. report showing that defendant had been charged but not convicted of homicide at the time he cross-examined the defendant concerning this particular matter. In finding no error, this Court stated:

> [T]he record does not support his contention that the District Attorney acted in bad faith. The FBI report was not made a part of the record, and defendant failed to request a *voir dire* to determine whether the District Attorney acted in good faith. We have held that when the record contains no evidence regarding whether a District Attorney acted in good faith in inquiring into a defendant's prior criminal offenses or reprehensible conduct, the court's ruling permitting the question to be asked will be presumed to be correct. *State v. McLean,* 294 N.C. 623, 242 S.E. 2d 814 (1978). Furthermore, any possible prejudice to defendant was negated by the fact that he was given the opportunity to explain that he had not been convicted of homicide. *State v. McLean, supra.* We find no merit in this assignment of error.

*State v. Clark,* 300 N.C. at 125, 265 S.E. 2d at 210.

In instant case, the questions directed to the defendant were all related to convictions and specific acts. During this portion of defendant's cross-examination, he answered the questions regarding prior convictions in varying degrees which ranged from admitting or denying to volunteering information about charges, acquittals, and compromises. At no place in this record do we find anything which discloses that the district attorney acted on lack of information or that he acted in bad faith in cross-examining. Thus, there is not a scintilla of evidence to show that the trial judge abused his discretion by permitting the district attorney to cross-examine defendant about prior convictions.

This assignment of error is overruled.

[3] Defendant argues that the trial judge erred by not declaring a mistrial on his own motion when during the *voir dire* of prospective jurors while the district attorney was trying to "death qualify" a prospective juror the juror made the statement,

"I don't believe in just going out and killing people," and the district attorney in reply stated, "Yes ma'am. That's what this trial is all about." Defendant contends that the comment of the district attorney caused the jurors to form an opinion concerning defendant's guilt before any evidence was presented. We do not agree.

Whether a motion for mistrial should be granted is a matter which rests in the sound discretion of the trial judge, *State v. Dollar*, 292 N.C. 344, 233 S.E. 2d 521 (1977), and a mistrial is appropriate only when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict under the law. *State v. Chapman*, 294 N.C. 407, 241 S.E. 2d 667 (1978).

In instant case, it would seem that the most reasonable interpretation of the exchange between the district attorney and the prospective juror would be that the prospective juror meant to convey the fact that she believed in capital punishment only when the evidence justified its imposition and that the district attorney merely rejoined that this was the purpose of the trial. Apparently the exchange had little actual impact on defense counsel since he failed to move for a mistrial. We find nothing in this dialogue between the district attorney and the prospective juror which would require the trial judge to declare mistrial on his own motion.

[4] Defendant assigns as error the admission of certain testimony relating to prior abuse of the victim by defendant.

Bill Wilborne, the father of the victim, testified as a State's witness. On cross-examination, defense counsel questioned the witness concerning his attitude toward defendant and elicited from the witness an admission that he had shot defendant on a date prior to the death of witness's daughter. On redirect the following exchange took place:

Q. All right, Mr. Wilborn [sic], tell the jury why you shot him.

A. He had—she had taken out papers—I had some papers taken out that he wasn't even supposed to be on the premises, and—

Q. What do you mean—not supposed to be on what premises?

A. On my premises.

Q. Why was he not supposed to be on your premises?

MR. PORTER: Objection.

MR. ASHBURN: He brought it up, Your Honor.

COURT: Overruled.

EXCEPTION NO. 23

Q. Go ahead, sir.

A. He was not supposed to be on my premises at all, because first of all he didn't know how to act. And the next thing, he was abusing his wife—whatever you call abusing—other words, wasn't getting along—and I had to keep her there for her protection at that time, yes. And then he was wanting to get to her there, where she was then.

And so I taken out those papers to keep him off of my premises and he was going to overrule the papers—

Q. What kind of papers?

A. The kind that you take out that you tell people when you don't want them on your premises.

Q. All right, sir.

A. And so he came, anyway.

Initially, we note that it is well settled that after a witness has been cross-examined the party calling him may reexamine the witness so as to clarify the new matter elicited on cross-examination. 1 Stansbury's North Carolina Evidence, *Witnesses* § 36 (Brandis rev. 1973). Thus, when defense counsel sought to impeach the witness by cross-examining him concerning the shooting of defendant, the door was opened for the witness to testify as to the reason for his actions so as to restore his credibility. This evidence of prior maltreatment by defendant of his wife was competent. Its weight was for the jury. *State v. Kincaid,* 183 N.C. 709, 110 S.E. 612 (1922). Such evidence bears on the intent, malice, motive, and premeditation and deliberation on the

part of defendant. *State v. Moore,* 275 N.C. 198, 166 S.E. 2d 652 (1969). Further, this record discloses that after Mr. Wilborne testified, evidence that defendant had threatened his wife with a knife and had on more than one occasion physically assaulted her was admitted into evidence without objection. Defendant thereby lost the benefit of his objection. 1 Stansbury's North Carolina Evidence, *Witnesses* § 30 (Brandis rev. 1973), and cases there cited.

For reasons stated, this assignment of error is overruled.

[5] By his assignment of error number five, defendant contends that the trial judge erred by admitting into evidence ten photographs. He argues that the number of photographs were excessive, unnecessarily cumulative, and prejudicial. Actually, eleven photographs were admitted into evidence. Nine photographs showed the scene of the crime, and two photographs depicted the victim's wounds. It is defendant's position that the two photographs showing the victim's wounds were unduly inflammatory and prejudicial since the cause of death was undisputed.

In North Carolina photographs are admissible to illustrate the testimony of witnesses and their admission for that purpose with proper limiting instructions is not error. *State v. Horton,* 299 N.C. 690, 263 S.E. 2d 745 (1980); *State v. Sledge,* 297 N.C. 227, 254 S.E. 2d 579 (1979). The fact that a photograph may depict a horrible and gruesome scene does not render it inadmissible into evidence when properly authenticated as a correct portrayal of conditions observed and related by a witness who uses the photograph to illustrate his testimony. *State v. Temple,* 302 N.C. 1, 273 S.E. 2d 273 (1981); *State v. Horton, supra; State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969), *death sentence vacated,* 403 U.S. 948, 29 L.Ed. 2d 859, 91 S.Ct. 2283 (1971).

Defendant relies heavily upon *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889 (1963), and *State v. Mercer,* 275 N.C. 108, 165 S.E. 2d 328 (1969). These cases are distinguishable from instant case.

In *Foust* the State offered into evidence ten color photographs showing the death wound to the victim's chin. This Court, finding other errors, granted a new trial and noted, "Under the circumstances here it seems that there was an ex-

cessive use of these ten photographs by the State." 258 N.C. at 460, 128 S.E. 2d at 894.

In *Mercer* the State introduced three photographs of the body of a five year old victim at the funeral home. The child's lifeless body was shown with projecting probes which indicated the point of entry, the course, and point of exit of the bullet that caused his death.

In the case before us for decision, there were only two photographs of the victim's body. One of the photographs showed the face of the victim and was relevant for proper identification by the testifying witnesses, and the other photograph showed the back of the neck of the victim and was used by the witnesses in testifying to their observations and the cause of death. The remaining photographs were merely pictures of the scene and were in no way gruesome or inflammatory. There is no merit in defendant's argument that these photographs of the scene had no probative value and were therefore prejudicial. Each photograph was taken from a different angle and was used to show the position of the body, and the distance to a curve in the road from which the evidence tended to show that defendant looked back before continuing his flight. These photographs were important to show the distance from which the gun was fired and defendant's actions after the shooting. They tended to bear upon the question of intent, premeditation, and deliberation.

Defendant's argument that the photographs were irrelevant since the cause of death was uncontroverted is without merit. We recently addressed a similar contention in *State v. Elkerson*, 304 N.C. 658, 285 S.E. 2d 784 (1982). We there stated:

> We have held that a stipulation as to the cause of death does not preclude the State from proving all essential elements of its case. (Citations omitted.) It is also established by our case law that in a homicide prosecution photographs showing the condition of the body when found, its location when found, and the surrounding scene at the time the body was found are not rendered incompetent by the portrayal of the gruesome events which the witness testifies they accurately portray. (Citations omitted.)

*Id.* at 665, 285 S.E. 2d at 789. *Cf. State v. Johnson*, 298 N.C. 355, 259 S.E. 2d 752 (1979).

We therefore hold that under the circumstances of this case, the trial judge correctly admitted the challenged photographs into evidence.

[6]    Finally, defendant assigns as error the denial of his motion to strike a portion of a witness's answer to a question asked him on cross-examination by defense counsel.

Don Lee Little, a State's witness, was cross-examined by defense counsel concerning when he had heard defendant say that "I'm going to kill me somebody." Defense counsel asked: "Don, when do you say this happened," to which the witness replied, "Three weeks before this -- before he murdered his wife." Defendant contends that the trial court erred in denying his motion to strike the portion of Little's answer, "before he murdered his wife," in that this portion of the answer constituted an expression of an improper opinion as to the ultimate issue the jury was to decide.

It seems clear from a reading of the subsequent answers of the same witness that he used the term "murdered" in the lay sense to mean "killed."

We are of the opinion that the trial judge should have allowed the motion to strike. However, we are convinced from an examination of this witness's testimony and the context in which the answer was elicited that the failure of the trial judge to grant defendant's motion to strike and the admission of this evidence had little impact upon the jury. When compared with the overwhelming evidence of defendant's guilt, we do not believe that there is a reasonable possibility that the admission of this evidence might have contributed to defendant's conviction. *State v. Knight*, 282 N.C. 220, 192 S.E. 2d 283 (1972). We therefore hold that the trial judge's ruling in refusing to strike this evidence was harmless error.

We have carefully examined this entire record and find no error warranting that the verdict returned and the judgment imposed be disturbed.

No error.