STATE OF NORTH CAROLINA v. FREDRICK NEIL SAUNDERS, AKA NEAL SAUNDERS

No. 581A85

(Filed 2 July 1986)

**1. Homicide § 21.5— first degree murder—evidence of deliberation—sufficient**

There was sufficient evidence of deliberation to carry a charge of first degree murder to the jury where the evidence revealed a minimum of provocation on the part of the deceased; defendant had become suspicious that the deceased was an informant working with local law enforcement agencies; there was substantial evidence of statements made by defendant after the killing relating to the part he played in the crime; there was evidence of threats

made against the victim by defendant prior to the homicide; and there was evidence that the deceased was shot in the back of the head at close range with a .12 gauge sawed-off shotgun, and the body pushed into the trunk of a car and dumped several hours later in a creek in South Carolina.

**2. Homicide § 15.4— first degree murder—pathologist's testimony—defendant's account inconsistent with wound—admissible**

The trial court did not err in a prosecution for first degree murder by overruling defendant's objections to the testimony of a pathologist that the defendant's account of the manner in which the shooting occurred was inconsistent with the type of wound suffered by the victim and that the wound was not a self-defense type of wound. Even though self-defense was an ultimate issue in the case, the pathologist who performed the autopsy was clearly in a position to assist the jury in understanding the nature of the deceased's wound and in determining whether defendant acted in self-defense. N.C.G.S. § 8C-1, Rule 704 (Cum. Supp. 1985).

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing life imprisonment entered by *Preston, J.,* at the 20 May 1985 Criminal Session of Superior Court, CUMBER-LAND County, upon a jury verdict of guilty of murder in the first degree. Heard in the Supreme Court 11 February 1986.

*Lacy H. Thornburg, Attorney General, by Ellen B. Scouten, Assistant Attorney General, for the State.*

*James C. MacRae, for defendant-appellant.*

FRYE, Justice.

Defendant contends that the trial court committed two errors in his trial. First, defendant argues that the trial court erred in denying his motion to dismiss, contending that there was insufficient evidence of deliberation to support the charge of murder in the first degree. Second, defendant contends that the trial court erred in overruling his objections to the medical expert witness' testimony concerning the inconsistency in defendant's account of the killing and the nature of the deceased's wound. After carefully reviewing the record, the relevant law, and the parties' briefs, we find no error in the trial proceedings leading to defendant's conviction.

Defendant was charged with murder in the first degree. Evidence for the State tended to show that defendant met the deceased, Willie Thomas "Tommy" Wilson, in December of 1983 and began committing housebreakings with him. In late December

1983, defendant, Wilson, and Larry Joe Wade broke into the Mc-Caskill residence in Hope Mills and stole a red bedspread, video reels and cassette tapes, and a coin collection. On 26 December 1983, defendant, Wilson, and Wade broke into the residence of defendant's former employer and stole some guns, including a twelve-gauge pump shotgun. The men took the guns to Wade's house and sawed off the barrel of the twelve-gauge shotgun.

On 27 December 1983, defendant and Wilson put the stolen guns in the back seat of Wilson's car and drove around trying to sell them. After being unsuccessful in this endeavor, they drove to Carl Gardner's house to attend a pig picking. Around 9:00 p.m., defendant and Wilson left Gardner's house together in Wilson's car to locate a floor jack and to steal some tires. After locating a floor jack, the men drove to a wooded area near Shaw Road to look for the tires. At this time, defendant suggested that they remove the stolen guns from the back seat and place them in the trunk. Both men proceeded to do so. Wilson walked to the back of the car, leaned into the trunk, and deposited some guns. As Wilson raised himself out of the trunk area, defendant stepped behind him and shot him in the back of the head at close range with a twelve-gauge pump sawed-off shotgun. Defendant pushed Wilson's body into the trunk of the car and drove around attempting to locate Larry Joe Wade. After locating Wade, defendant asked Wade to ride with him to an undisclosed destination. The men drove to an area off Interstate 20 near Columbia, South Carolina, and dumped Wilson's body into a creek. They also threw into the creek a red bedspread, some video reels and cassette tapes, and a coin collection. On their return to North Carolina, their car broke down, and the men abandoned it after hiding the stolen guns in a wooded area near Interstate 20. They rode a bus back to Fayetteville.

Upon arrival in Fayetteville, defendant hid himself from the police for a couple of days. He then stole a car, painted it, and drove back to South Carolina to retrieve the guns that he had hidden days earlier. Defendant returned to North Carolina, sold some of the guns, and fled to Lafayette, Louisiana.

On 17 January 1984, Phillip Brooks, Richland County Sheriff's Department, Columbia, South Carolina, received a report that a citizen had seen a body in a creek near Interstate 20. The body

removed from the creek had a wound two inches in diameter and four inches from the right ear on the right side of the lower part of the back of the head. An autopsy performed in South Carolina on 18 January 1984 disclosed that a shotgun wound was the cause of death. The body was later identified as that of Willie Thomas Wilson.

The South Carolina police officers also recovered from the creek a red bedspread, a variety of collector's coins, video reels and cassette tapes, and some personal papers. On one piece of paper was the name McCaskill and two telephone numbers. A South Carolina officer called the numbers and learned that the McCaskill's home in Hope Mills had recently been burglarized, and that the items recovered from the creek had been taken from their home.

On 20 January 1984, the Cumberland County Sheriff's Department picked up Larry Joe Wade as a suspect in the burglary of the McCaskill residence. Wade told the officers that on the night of 27 December 1983, defendant asked him to ride with him to an undisclosed location, and that defendant told Wade that he had shot "Tommy" Wilson and put him in the trunk of the car. Wade stated that he and defendant dumped Wilson's body into a creek in South Carolina.

On 17 February 1984, defendant was arrested in Lafayette, Louisiana. At the time of his arrest, Louisiana police found a twelve-gauge pump sawed-off shotgun in defendant's bedroom under the bed. Defendant waived extradition and was returned to North Carolina.

Defendant testified in his own behalf at trial. His account of the events leading to Wilson's death was consistent with the evidence offered by the State with one exception. Defendant testified that he acted in self-defense when he shot Wilson. According to defendant, after Wilson leaned over and put some guns in the trunk of the car, Wilson pulled out a pistol and pointed it at defendant. Defendant stated that "I saw the gun, that's whatever [sic] I stepped behind him and shot him."

The jury returned a verdict of guilty of murder in the first degree.

## I.

**[1]**  Defendant first assigns as error the denial of his motions to dismiss made at the close of the State's evidence and at the close of all the evidence. It is defendant's position that there was not sufficient evidence of deliberation to carry the case to the jury on the charge of murder in the first degree. Defendant concedes that the State has offered evidence sufficient to go to the jury on the question of premeditation.

After the denial of defendant's motion to dismiss at the close of the State's evidence, defendant proceeded to offer evidence, thereby waiving his motion to dismiss at the close of the State's evidence. *State v. Leonard*, 300 N.C. 223, 266 S.E. 2d 631 (1980). We, therefore, only consider defendant's motion to dismiss at the close of all the evidence. *Id.*

In considering defendant's contentions, we must apply the established rule that upon a motion for dismissal the trial court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence. *State v. Bullard*, 312 N.C. 129, 322 S.E. 2d 370 (1984). If there is substantial evidence of each essential element of the charged offenses, and of defendant being the perpetrator of the offense, the motion is properly denied. *Id.*

"Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation." *State v. Calloway*, 305 N.C. 747, 751, 291 S.E. 2d 622, 625 (1982). Premeditation is defined as "thought beforehand for some length of time no matter how short." *Id.* Deliberation means an "intention to kill executed by the defendant in a 'cool state of blood' in furtherance of a 'fixed design to gratify a feeling of revenge, or, to accomplish some unlawful purpose.' " *Id.* " 'Cool state of blood' as used in connection with premeditation and deliberation does not mean absence of passion and emotion but means that an unlawful killing is deliberate and premeditated if executed with a fixed design to kill notwithstanding defendant was angry or in an emotional state at the time." *State v. Ruof*, 296 N.C. 623, 636, 252 S.E. 2d 720, 728 (1979).

Ordinarily, premeditation and deliberation must be proved by circumstantial evidence. Some circumstances to be considered are:

"(1) want of provocation on the part of the deceased, (2) conduct and statements of the defendant before and after the killing, (3) threats made against the victim by defendant, (4) ill will or previous difficulty between the parties, and (5) evidence that the killing was done in a brutal manner." *State v. Calloway*, 305 N.C. 747, 751, 291 S.E. 2d 622, 625-26 (1982).

When the evidence is considered in the light most favorable to the State, it discloses that the trial judge properly denied defendant's motion. (1) The evidence reveals a minimum of provocation on the part of the deceased. There was some evidence at trial that, prior to the homicide, defendant became suspicious that the deceased was an informant working with local law enforcement agencies. (2) There was substantial evidence of statements made by defendant after the killing relating to the part he played in the crime. Several witnesses testified that in the days following Wilson's death defendant stated, in effect, that they didn't have to worry about Wilson anymore because defendant had killed him. (3) In addition, there was evidence of threats made against victim by defendant prior to the homicide. One witness testified that he overheard defendant say that he was going to kill Wilson because he was a "snitch." Another testified that defendant, after discussing whether Wilson was a "snitch," stated that he "would take care of it." (4) While there was no significant evidence of previous difficulty between defendant and the deceased, there was evidence that defendant believed Wilson was a "snitch" working with local law enforcement agencies, and evidence that defendant had threatened bodily harm to Wilson because of his alleged involvement with the police. (5) The evidence reveals that Wilson was killed in a brutal manner. While Wilson unsuspectingly stood at the trunk of his car, defendant stepped behind him and shot him at close range in the back of the head with a twelve-gauge pump sawed-off shotgun. After defendant shot Wilson, defendant pushed the body into the trunk of the car and several hours later dumped the body into a creek in South Carolina. We hold that there was substantial evidence which would permit the jury to draw reasonable inferences that defendant acted with premeditation and deliberation when he shot and killed the deceased. Therefore, the judge did not err in denying defendant's motion to dismiss made at the close of all the evidence.

## II.

**[2]** Defendant next contends that the trial court erred in overruling his objections to the testimony of Dr. William Armstrong, an expert in pathology, that defendant's account of the manner in which the shooting "went down" was inconsistent with the type of wound suffered by victim, and that the wound was not a self-defense type wound. Defendant argues that the expert witness' testimony expressed an opinion on the issues to be decided by the jury, and therefore invaded the jury's province.

In *State v. Wilkerson*, 295 N.C. 559, 568-69, 247 S.E. 2d 905, 911 (1978), this Court held that admissibility of expert opinion depends not on whether it would invade the jury's province, but rather on "whether the witness . . . is in a better position to have an opinion . . . than is the trier of fact."

N.C.G.S. § 8C-1, Rule 702, provides that:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

Dr. Armstrong's expert testimony is evidence properly admitted under this rule. His opinion as to the nature of the deceased's wound was based upon his examination of the entrance wound in the deceased's head and the path the shotgun pellets traveled after entry. As the pathologist who performed the autopsy, Dr. Armstrong was clearly in a position to assist the jury in understanding the nature of the deceased's wound and in determining whether defendant, in fact, acted in self-defense when he shot the deceased. Therefore, he was properly allowed to testify to these matters in the form of an opinion. This is true even though self-defense was an ultimate issue in the case. N.C.G.S. § 8C-1, Rule 704 (Cum. Supp. 1985). The trial judge did not err in overruling defendant's objections to the pathologist's testimony.

In defendant's trial we find

No error.