STATE OF NORTH CAROLINA v. GEORGIA JACKSON TORRES

No. 892SC510

(Filed 17 July 1990)

**1. Criminal Law § 75.7 (NCI3d) — defendant not in custody — no interrogation without benefit of counsel**

There was no merit to defendant's contention that she was in custody once officers transported her from her house to the sheriff's department and that officers interrogated her without the presence of counsel, since defendant was not in custody until she was advised of her Miranda rights, asked if she wanted an attorney present, and informed that she could stop answering questions whenever she desired, despite her assertions that she was under arrest when she was transported to the sheriff's department, during the time she waited in a conference room with her daughters and family friends, and during the time she asked if she needed an attorney present.

**Am Jur 2d, Evidence §§ 555-557.**

**2. Homicide § 28 (NCI3d) — imperfect self-defense — instruction not required**

The trial court in a second degree murder case did not err in failing to instruct on imperfect self-defense where the evidence tended to show that the victim was intoxicated at the time of the altercation, was unarmed, and posed no immediate harm to defendant or any member of her family.

**Am Jur 2d, Homicide §§ 157, 519.**

**3. Homicide § 21.7 (NCI3d) — second degree murder — sufficiency of evidence of malice**

There was sufficient evidence of malice in a second degree murder case where the evidence tended to show that defendant, without a justifiable excuse or mitigating factors, shot her husband five times at some distance away with a rifle.

**Am Jur 2d, Homicide § 438.**

**4. Homicide § 15.4 (NCI3d) — position of victim when shot — expert testimony admissible**

The trial court in a second degree murder case did not err in allowing the testimony of an expert in pathology that

one of the shots which entered the victim could have been fired while he was on the floor.

**Am Jur 2d, Homicide § 397.**

5. **Criminal Law § 1166 (NCI4th) — sentencing — aggravating factor of victim's intoxication**

   Where the preponderance of the evidence showed that the victim was intoxicated and the defendant knew it, the trial court, in determining factors which would aggravate defendant's sentence, was required to find that the victim was mentally infirm at the time he was killed.

   **Am Jur 2d, Homicide §§ 552, 554.**

6. **Criminal Law § 1123 (NCI4th) — sentencing — aggravating factor of premeditation and deliberation**

   In a second degree murder prosecution the trial court properly found as an aggravating factor that defendant's actions were premeditated and deliberate, since the prosecutor's election to charge defendant with second degree murder rather than first degree murder did not prevent the court from finding that defendant acted with premeditation and deliberation, and the preponderance of the evidence established nothing less than premeditation and deliberation.

   **Am Jur 2d, Homicide §§ 552, 554.**

7. **Criminal Law § 1266 (NCI4th) — sentencing — mitigating factor of good standing in community — insufficient evidence**

   The trial court did not err in failing to find as a mitigating factor defendant's good standing in the community, though defendant's evidence of her good character and reputation was uncontradicted, since the evidence was not manifestly credible in that it consisted of testimony by defendant's acquaintances at work who had no knowledge of defendant's character and reputation in the community in which she lived, and the only defense witness who could express an opinion as to defendant's reputation in the community testified that defendant "enjoys having a good time." N.C.G.S. § 15A-1340.4(a)(2)m.

   **Am Jur 2d, Homicide §§ 552, 554.**

**8. Criminal Law § 1222 (NCI4th) — sentencing — mitigating factor of mental condition — court not required to find**

Expert testimony concerning the battered wife syndrome did not require the sentencing judge to find as a mitigating factor for defendant's second degree murder of her husband that she suffered from a mental condition that significantly reduced her culpability, since failure to find a nonstatutory mitigating factor, even when it is supported by uncontradicted, substantial, and manifestly credible evidence, will not be disturbed absent an abuse of discretion.

**Am Jur 2d, Homicide §§ 552, 554.**

Judge PARKER concurring in the result.

Judge GREENE dissenting.

APPEAL by defendant from judgment entered 14 October 1988 by *Judge James R. Strickland* in BEAUFORT County Superior Court. Heard in the Court of Appeals on 10 January 1990.

After a trial by jury, defendant was convicted of second-degree murder in violation of G.S. § 14-17. Upon conviction, the trial court imposed an active prison term of thirty years. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Steven F. Bryant, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.*

JOHNSON, Judge.

The State's evidence tended to show that Sheriff Joe Sykes was called to the home of Tino and Georgia Torres at approximately 6:30 p.m. on 28 February 1988 to investigate a shooting. Upon arrival, Sheriff Sykes found the victim, Tino Torres, in the living room lying on his back. Shortly thereafter, the rescue squad arrived, placed Mr. Torres on a stretcher and transported him to the emergency room of the Beaufort County Hospital. Mr. Torres, however, died some time later.

Defendant, Georgia Torres, was transferred to the Sheriff's Department for purposes of investigation, but was not under arrest. When she asked whether she needed an attorney, she was told

that "she did not need one at that time." Defendant then awaited questioning in a conference room with two of her daughters and two family friends. Just prior to being questioned by the investigating officers, defendant was advised of her Miranda rights, as prescribed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), asked if she wanted an attorney present and informed that she could stop answering questions whenever she desired. Defendant indicated that she understood her rights and that she did not want an attorney present. Irrespective of the fact that no promises or assurances were made, defendant made a statement. Georgia Torres was later charged with second-degree murder.

An autopsy subsequently performed by Dr. Stan Harris revealed that Mr. Torres had been shot five times. Gunshot entrances were observed to the left upper arm, the front left chest, the right chest, the left lower abdomen and just below the rib cage. Based upon the paths of the bullets, it was concluded that the bullet to the victim's left upper arm shattered a bone thereby making it doubtful that he (Mr. Torres) could have used his arm after receiving that particular gunshot wound and that the fatal shot could have been fired while Mr. Torres was on the floor. Since the autopsy did not reveal evidence of powder residue on the wounds, it was further concluded that the shots were fired some distance away from victim. The results of a blood alcohol test suggested that Mr. Torres was intoxicated during the altercation.

Defendant's account of the events of 28 February was wholly contradictory to that of the State's and tended to show the following. Defendant, after marrying Tino Torres in October, 1986, became a victim of his long history of drinking and abusive behavior. On the night prior to the shooting, defendant and Mr. Torres drove to a Beaufort County bar where the couple got into a verbal disagreement and physical fight. The police were summoned by the bartender and Mr. Torres went to a friend's house, leaving defendant at the bar.

On 28 February, Mr. Torres arrived at defendant's house at approximately 6:15 p.m. to pick up his belongings. Upon his arrival, an argument between defendant and Torres started and moments later a fight ensued. Defendant, allegedly concerned about her safety and the safety of her family, picked up a rifle and shot her husband three times. (Contrary to the defendant's assertion that she only shot her husband three times, medical reports conclusively establish that Mr. Torres was, in fact, shot five times.) Defendant

alleges that her actions were not premeditated and deliberated and that she shot her husband in self-defense.

[1]   On appeal, defendant brings forth nine questions for this Court's review. By Assignment of Error number one, defendant contends that the trial court erroneously denied her motion to suppress statements that were obtained in violation of her constitutional rights. Defendant bases her contention on the fact that she believes that she was in custody once the officers transported her from her house to the Beaufort County Sheriff's Department and that the officers interrogated her without the presence of counsel. Following a careful review of the evidence, we conclude defendant's constitutional rights were not violated.

Unquestionably, a suspect in custody must be informed of his constitutional rights before being questioned by law enforcement officers. *State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241 (1985). Where "an accused requests the presence of counsel, he may not be subjected to further interrogation by the police until counsel has been made available to him, unless the accused himself initiates further communication with the officers." *State v. Ladd*, 308 N.C. 272, 285, 302 S.E.2d 164, 173 (1983). If, however, an accused merely makes an inquiry as to whether he needs an attorney, he has not invoked his constitutional privilege to counsel. *See State v. McQueen*, 324 N.C. 118, 377 S.E.2d 38 (1989) (Defendant plainly invoked the right to counsel when he unequivocally stated, "I want my lawyer."); *State v. Ladd, supra.* (Defendant undeniably invoked his right to counsel when he stated "I will tell you where the rest of the money is after I talk to my lawyer.") The warnings required· by *Miranda v. Arizona, supra,* are not necessary where a person is not in custody or not being questioned. *State v. Braswell, supra.* On appeal, the reviewing court must first determine whether the person was in custody at the time of questioning and then whether the person was, in fact, interrogated for *Miranda* purposes. If it is concluded that the person was not in custody during the time of questioning, any confession made will be admissible. *State v. Davis*, 305 N.C. 400, 290 S.E.2d 574 (1982). The reviewing court must utilize

> an objective test of whether a reasonable person in the suspect's position would believe that he had been taken into custody or otherwise deprived of his freedom of action in any significant

way or, to the contrary, would believe that he was free to go at will.

*Id.* at 410, 290 S.E.2d at 581. *See also Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

The record in the case *sub judice* indicates that: (1) a *voir dire* hearing was conducted on the admissibility of defendant's confession; (2) findings of fact and conclusions of law were made by the trial court; and (3) the motion to suppress defendant's statements was thereafter denied. If supported by competent evidence in the record, the trial court's findings of fact following a *voir dire* hearing on the voluntariness of a confession are conclusive on appeal and may not be modified or set aside by the reviewing court. *State v. Rook,* 304 N.C. 201, 283 S.E.2d 732 (1981), *cert. denied,* 455 U.S. 1038 (1982).

Inasmuch as we are bound by the record, we are unable to adopt defendant's position that she would have been detained had she chosen to get up and leave the Sheriff's Department *prior* to the time she gave her statement. Testimonial evidence suggests that defendant would have only been detained *after* she was advised of her Miranda rights, asked if she wanted an attorney present and informed that she could stop answering questions whenever she desired. For it was at this point that she was considered "in custody," despite defendant's assertions that she was under arrest when she was transported to the Sheriff's Department; during the time she waited in the conference room with her daughters and family friends; and during the time she asked if she needed an attorney present. Furthermore, defendant's reliance upon *State v. Ladd, supra,* and *State v. Fincher,* 309 N.C. 1, 305 S.E.2d 685 (1983), is misplaced since in both instances the defendant clearly indicated his decision to invoke his right to counsel. Here, defendant merely inquired as to whether she needed an attorney present. Thus, defendant's constitutional rights were not violated and the trial court's findings of fact and conclusions of law on the voluntariness of defendant's statements were not in error. This assignment of error is overruled.

Defendant next contends that the second-degree murder conviction must be vacated since there was insufficient evidence of malice and since she acted in imperfect self-defense. We disagree.

[2] North Carolina recognizes that under certain circumstances, the right to kill becomes an inherent right of natural law, but that such recourse is only justifiable where there is a real or apparent necessity. It is further recognized that

> a defendant is entitled to have the jury consider acquittal by reason of *perfect* self-defense when the evidence, viewed in the light most favorable to the defendant, tends to show that at the time of the killing it appeared to the defendant and she believed it to be necessary to kill the decedent to save herself from imminent death or great bodily harm.

*State v. Norman*, 324 N.C. 253, 259, 378 S.E.2d 8, 12 (1989). However, if the defendant is the initial aggressor, but is without intent to kill or seriously injure the decedent, and the decedent intensifies the confrontation to the point where it is reasonable for the defendant to believe that she must kill the decedent to save herself from imminent death or great bodily harm, such defendant is not justified in the killing, but is guilty of a lesser charge. *Id.*

In the present case, no evidence was introduced necessitating a jury instruction on imperfect self-defense. The evidence instead tended to show that the victim was intoxicated at the time of the altercation, unarmed and posed no immediate harm to the defendant or any member of her family. Thus, the trial court's instruction to the jury on self-defense was proper.

[3] Second-degree murder is defined as the unlawful killing of a human being with malice, but without evidence of premeditation and deliberation. *State v. Jenkins*, 300 N.C. 578, 268 S.E.2d 458 (1980). The element of malice may be either expressed or implied. As a general rule, malice exists as a matter of law whenever there has been an unlawful and intentional homicide without an excuse or mitigating factors. *State v. Moore*, 275 N.C. 198, 166 S.E.2d 652 (1969). Malice, nonetheless, may be implied from the use of a deadly weapon, individual circumstances, or the actions of the defendant. *State v. Mapp*, 45 N.C. App. 574, 264 S.E.2d 348 (1980).

In light of the fact that the evidence presented at the sentencing hearing shows defendant, without a justifiable excuse or mitigating factors, shot Mr. Torres five times at some distance away with a rifle, we remain unpersuaded that the defendant shot her husband with anything less than malice and therefore overrule this assignment of error.

**[4]** By Assignment of Error number three, defendant contends that the trial court erred by overruling her objections to the testimony of Dr. Harris, an expert in pathology, that one of the shots could have been fired while the victim was on the floor. Defendant argues that Dr. Harris expressed an opinion on issues to be decided by the jury. We disagree.

In considering defendant's contention, we must apply the general guidelines enunciated in *State v. Saunders*, 317 N.C. 308, 345 S.E.2d 212 (1986), and *State v. Wilkerson*, 295 N.C. 559, 247 S.E.2d 905 (1978). As articulated in both cases, "[t]he admissibility of expert opinion depends not on whether it would invade the jury's province, but rather on 'whether the witness . . . is in a better position to have an opinion . . . than is the trier of fact.'" *State v. Saunders*, *supra* at 314, 345 S.E.2d at 216, *quoting State v. Wilkerson*, *supra* at 568-69, 247 S.E.2d at 911.

Here, Dr. Harris' testimony was properly admitted pursuant to G.S. § 8C-1, Rule 702 which provides that:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

His opinion as to the positioning and path of the bullets was based upon his examination of the bullet entrances during an autopsy. Clearly, as the pathologist who performed the autopsy of the victim, Dr. Harris was in the best position to assist the jury in understanding the characteristics of the victim's wounds and determining whether the defendant acted in self-defense when she shot her husband. Thus, the trial court did not err in allowing Dr. Harris to testify that in his opinion one of the shots could have entered the victim while the victim was on the floor. This assignment of error is overruled.

By Assignments of Error five and six, defendant challenges the trial court's consideration of premeditation, deliberation and the victim's mental state as aggravating factors in her sentencing.

**[5]** As previously stated by this Court and our Supreme Court,

[t]he primary purposes of sentencing a person convicted of a crime are to impose a punishment commensurate with the

injury the offense has caused, taking into account factors that may diminish or increase the offender's culpability; to protect the public by restraining offenders; to assist the offender toward rehabilitation and restoration to the community as a lawful citizen; and to provide a general deterrent to criminal behavior.

G.S. § 15A-1340.3; *see also State v. Melton*, 307 N.C. 370, 298 S.E.2d 673 (1983), and *State v. Hough*, 61 N.C. App. 132, 300 S.E.2d 409 (1983). Where, as here, the preponderance of the evidence shows that the victim was intoxicated and the defendant knew it, the trial court must find that the victim was mentally infirmed at the time he was killed. *See State v. Potts*, 65 N.C. App. 101, 308 S.E.2d 754 (1983), *disc. rev. denied*, 311 N.C. 406, 319 S.E.2d 278 (1984).

[6] We do not believe that the prosecutor's election to charge defendant with second-degree murder rather than first-degree murder prevented the trial court from finding that the defendant acted with premeditation and deliberation. We also do not believe that the preponderance of the evidence establishes something less than premeditation and deliberation. Accordingly, the trial court properly found as aggravating factors that the defendant's actions were both premeditated and deliberated and that the victim was mentally infirmed at the time he was killed.

Defendant's next two Assignments of Error challenge the trial court's failure to find as mitigating factors defendant's good standing in the community and her alleged mental condition that significantly reduced her culpability.

[7] At a sentencing hearing, a defendant bears the burden of persuasion on the issue of mitigating factors. He, in essence, is asking the court to find that "the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn." *State v. Taylor*, 309 N.C. 570, 577, 308 S.E.2d 302, 307 (1983), *quoting North Carolina National Bank v. Burnette*, 297 N.C. 524, 536-37, 256 S.E.2d 388, 395 (1979). As defined by statute, the mitigating factor of good character refers to the defendant's good character and reputation in the community in which he lives. *See* G.S. § 15A-1340.4(a)(2)m. We note that

[d]etermining the credibility of evidence is at the heart of the fact-finding function. Nevertheless, . . . we must find the sentencing judge in error if he fails to find a statutory factor

when evidence of its existence is both uncontradicted and manifestly credible.

*State v. Jones*, 309 N.C. 214, 220, 306 S.E.2d 451, 456 (1983).

In the case under discussion, defendant's evidence of her good character and reputation is uncontradicted, however, it is not manifestly credible. With the exclusion of one witness, the other witnesses were acquaintances from work and had no knowledge of defendant's character and reputation in the community in which she lived. The only defense witness that could express an opinion as to defendant's reputation in the community testified that defendant "enjoys having a good time." Such testimony is not overwhelmingly persuasive on the question of defendant's good character or good reputation in the community where she lives. We therefore conclude that the testimony is not manifestly credible.

[8] Defendant further contends that the testimony of Dr. Sharon Willingham concerning the "battered wife syndrome" required the sentencing judge to find, as a mitigating factor, that she suffered from a mental condition as provided in G.S. § 15A-1340.4(a)(2)d. While we note that the term "mental condition" pursuant to G.S. § 15A-1340.4(a)(2)d has been held to include the abused spouse syndrome, we also note that a "[f]ailure to find a nonstatutory mitigating factor, even when it is supported by uncontradicted, substantial, and manifestly credible evidence, will not be disturbed absent an abuse of that discretion." *State v. Holden*, 321 N.C. 689, 697, 365 S.E.2d 626, 630 (1988). We have reviewed the evidence, but detect no abuse of the trial judge's discretion.

Finally, we have considered, but find it unnecessary to discuss defendant's last Assignment of Error that the trial court erred by failing to find, as mitigating factors, that defendant acted under strong provocation or that her relationship with her husband was extenuating. Suffice it to say that "[u]ncontradicted, quantitatively substantial, and credible evidence may simply fail to establish, by a preponderance of the evidence, any given factor in aggravation or mitigation." *State v. Michael*, 311 N.C. 214, 219-20, 316 S.E.2d 276, 280 (1984), *quoting State v. Blackwelder*, 309 N.C. 410, 419, 306 S.E.2d 783, 789 (1983). This assignment of error is overruled.

We conclude that defendant received a fair trial, free of prejudicial error, and that the sentence imposed on her conviction was proper.

No error.

Judge PARKER concurs in the result.

Judge GREENE dissents.

Judge PARKER concurring in the result.

I concur in the result only for the reason that in my opinion defendant was in custody while she was detained at the Sheriff's Department before questioning. Under the objective standard in *State v. Davis*, 305 N.C. 400, 290 S.E.2d 574 (1982), the question is whether a reasonable person in the suspect's position would believe that he was in custody or free to leave. The sheriff's deputy testified that if defendant had attempted to leave, she would not have been allowed to do so. The record also reveals, however, that prior to any questioning by any law enforcement officials, defendant was not only read her constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966), but she was specifically asked if she wanted a lawyer at that time. After consulting with a friend who was present, defendant responded that she did not. In view of this specific exchange concerning defendant's desire for counsel, defendant's earlier question in the patrol car as to whether she needed a lawyer and the response that she did not need a lawyer at that time were of no consequence. Unlike in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed. 2d 378 (1981), defendant did not make a specific request for counsel, and the question was asked and answered several hours before any interrogation took place. Defendant made no incriminating statements prior to being informed of her rights, and the evidence reveals no indication of pressure or coercion for her to talk. Defendant was obviously cognizant of the importance of counsel. She had several hours not only to consider but also to talk with friends and relatives who were in and out as to whether she should have a lawyer. Under these circumstances defendant, in my opinion, freely, voluntarily, and knowingly waived her right to remain silent and to have counsel present before being interrogated or giving her statement. For this reason the trial court did not err in denying the motion to suppress.

**STATE v. TORRES**

[99 N.C. App. 364 (1990)]

Judge GREENE dissenting.

The trial court entered the following pertinent findings of fact and conclusions of law:

### FINDINGS OF FACT

4. That on the evening of February 28th, 1988, the defendant, Georgia Jackson Torres, was at her residence, this being after the death of one Florentine Conteras Torres, and that several deputy sheriffs had arrived at said premises, Deputy Sheriff Joe Sykes being one of the early arrivals; that Deputy Sheriff Sykes made inquiry about what happened the night before and that subsequently Deputy Sheriff Joe Sykes transported the defendant, Georgin [sic] Ann Torres, along with the defendant's close friend, Brenda Purser, to the Sheriff's Department in the City of Washington.

5. That the defendant at that time was not under arrest.

6. That the defendant was placed in a conference room in the Sheriff's Department and that two of the defendant's daughters, along with Brenda Purser and Charles Purser, were at the Sheriff's Department.

7. That before the interview of the defendant by S.B.I. Agent Lewis Young and Deputy Sheriff Donald Deese, the defendant was in the conference room of the Sheriff's Department in the company of Deputy Sheriff Sykes and was subsequently in the office of Sheriff Sheppard.

8. That her children were in and out and at the point where the defendant made inquiry about an attorney she was advised that she did not need one at that time.

9. That the defendant had not been placed under arrest during any such inquiry.

. . . .

12. That while the defendant was in Sheriff Sheppard's office she was advised that Officer Donald Deese and S.B.I. Agent Lewis Young would question her and she asked if somebody could be with her stating that she wanted Charles Purser and Brenda Purser to be with her and that was arranged; that thereafter S.B.I. Agent Lewis Young and Deputy Sheriff Donald Deese went to Sheriff Sheppard's office to begin

the interview with the defendant, Georgia Jackson Torres, and that present with her throughout the complete interview that extended from 10:35 p.m., February 28, 1988 to 12:40 o'clock a.m. the next day were five individuals, to-wit: Young, Deese, Torres and Mr. and Mrs. Purser, with Charles Purser leaving only temporarily to obtain a soft drink for the defendant, Georgia Torres.

14. That the defendant prior to the commencement of the interview by S.B.I. Agent Young and Deputy Sheriff Deese was advised of her constitutional rights in conformity with the Miranda decision (*Miranda v. Arizona*, 384 U.S. 436).

CONCLUSIONS OF LAW

1. None of the constitutional rights, either federal or state, of the defendant were violated by her detention, interrogation or statements.

. . . .

4. That the defendant was in full understanding of her constitutional rights to remain silent and right to counsel and all other rights and that she freely, knowingly, intelligently and voluntarily waived each of those rights and thereupon made a statement to Officers Young and Deese.

5. That the statement made by the defendant to Officers Young and Deese on February 28, 1988 and February 29, 1988 was made freely, voluntarily and understandingly.

"The determination of whether an individual is 'in custody' during an interrogation so as to invoke the requirements of *Miranda* requires an application of fixed rules of law and results in a conclusion of law and not a finding of fact." *State v. Davis*, 305 N.C. 400, 414-15, 290 S.E.2d 574, 583 (1982). Determination of custody is based "upon an objective test of what a reasonable person in the suspect's position would believe that he had been taken into custody or otherwise deprived of his freedom of action in any significant way or, to the contrary, would believe that he was free to go at will." *Davis*, at 410, 290 S.E.2d at 581. Here, the trial court made no finding or conclusion concerning the issue of 'custody.' The findings of the trial court that the defendant was "not under arrest," while relevant to the issue of whether a person

is in custody, are not determinative of that issue. *See State v. Freeman*, 307 N.C. 357, 362, 298 S.E.2d 331, 334 (1983).

Nevertheless, the trial court's failure to enter a conclusion on the issue of whether the defendant was in 'custody' at any relevant time does not preclude this court from making a conclusion on the issue "whe[n] the historical facts are uncontroverted and clearly reflected in the record. . . ." *Davis*, 305 N.C. at 415, 290 S.E.2d at 583.

Combining the uncontradicted facts in the record with the findings of fact entered by the trial court, it is revealed that the defendant, at the request of Deputy Sheriff Sykes, traveled from her home in a sheriff's patrol car to a conference room at the sheriff's department. She was picked up at her home at 6:30 p.m. and arrived at the sheriff's department at approximately 7:00 p.m. She was placed in a conference room in the sheriff's department and remained in the presence of Deputy Sykes until 10:30 p.m., at which time two S.B.I. agents arrived and entered the room and remained in the room until 12:40 a.m. the following morning. Deputy Sykes, without advising the defendant of her *Miranda* rights, questioned the defendant "about what happened the night before." Sykes testified that if defendant had attempted to leave the conference room, he would have detained her. At some point between 7:00 p.m. and 10:30 p.m. the defendant made inquiry of either or both Deputy Sykes and Sheriff Nelson Sheppard as to whether she needed an attorney, and she was told that "she did not need one at that time." S.B.I. Agents Lewis Young and Donald Deese advised defendant of her *Miranda* rights at approximately 10:30 p.m. Specifically, Agent Young testified:

Q. All right. Prior to the time of asking her any questions, was she advised of her Miranda warnings?

A. Yes sir, she was.

Q. What did you . . . what did you tell her and what was her response?

A. I advised her she had the right to remain silent and not make any statement; that anything you say can be used against you in Court; you have the right to talk to a lawyer for advice before we ask you any questions and have him or anyone else with you during questioning. If you cannot afford to hire a lawyer one will be appointed to represent you before any

questioning if you wish one. Next I asked her if she wanted a lawyer now and . . .

Q. What . . . what did she tell you?

A. Well, at first she acted like she didn't know which . . . what she wanted to do and I indicated to her that that question meant did you want a lawyer right now in this very room while we talked; it doesn't mean you can't have a lawyer at another time or stop any time you want to, and she seemed hesitant as to what she wanted to do. She turned to the Pursers and they had some conversation about it and I told her all we needed was a "yes" or "no," that we could not advise her what to do. She ultimately answered "no," and then we went on and I advised her, if you decide to answer questions now without a lawyer present you have the right to stop answering them at any time. I asked her, "do you understand each of these rights I have explained to you?" she answered, "yes, I do." I asked her, "having these rights in mind, do you wish to talk to us and answer questions now." She answered, "yes, I will."

I believe these facts require the conclusion that the defendant was in custody and was subjected to interrogation not only when she was in the presence of the S.B.I. agents but also at the time she made her inquiry of Deputy Sykes as to whether she needed an attorney present at the time.[1] A deputy sheriff requested defendant to travel to the sheriff's department in a patrol car. She was placed in a conference room at the sheriff's department under the guard of a sheriff's deputy for almost six hours and was questioned by both Sykes and the two S.B.I. agents regarding the events of the homicide. The defendant was at no time advised that she did not have to travel to the sheriff's department with Deputy Sykes, nor was she ever told that she was free to leave the sheriff's department. In my opinion, a reasonable person in the defendant's position would have believed that she had been taken into custody and would not have believed that she was free

---

1. Assuming arguendo that the defendant was not subjected to custodial interrogation until the S.B.I. agents arrived, the defendant's assertion of a desire to speak with an attorney prior to their arrival was nonetheless a sufficient invocation of her right to counsel barring any police initiated interrogation. *See* LaFave & Israel, *Criminal Procedure* § 6.9, at 109 (Supp. 1990).

to go at will. In fact, the events occurring made a belief that she was not free to leave the more reasonable belief.

The Fifth and Fourteenth Amendments require that any custodial interrogation of defendant be preceded by advising the defendant that she has a right to the presence of an attorney. *Miranda v. Arizona*, 384 U.S. 436, 479, 16 L.Ed.2d 694, 726 (1966). Once a defendant invokes her right to have counsel present during the custodial interrogation, the defendant "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85, 68 L.Ed.2d 378, 386 (1981). This is so even if defendant has been further advised of his *Miranda* rights and waived those rights. *Id.*

Here, the defendant did not specifically request a lawyer but instead inquired of a custodial law enforcement officer whether she needed a lawyer at the time. The officer responded in the negative. Because the State has the burden of establishing a valid waiver and all doubts must be resolved in favor of protecting constitutional claims, *Michigan v. Jackson*, 475 U.S. 625, 633, 89 L.Ed.2d 631, 640 (1986), "a broad, rather than a narrow, interpretation [must be given] to a defendant's request for counsel . . . ." *Id.; Connecticut v. Barrett*, 479 U.S. 523, 529, 93 L.Ed.2d 920, 928 (1987). In my opinion, when the custodial officer refused to seek clarification of whether the defendant specifically wanted a lawyer present prior to any questioning, the inquiry of the defendant regarding her need for a lawyer must be accepted as a request for a lawyer. *See Ruffin v. United States*, 524 A.2d 685, 700-01 (D.C. 1987), *cert. denied*, 486 U.S. 1057, 100 L.Ed.2d 927 (1988) (appropriate response to ambiguous assertion of right to counsel should be a request by police interrogators for clarification); *People v. Superior Court of Mono County*, 542 P.2d 1390, 1394-95 (1975), *cert. denied*, 429 U.S. 816, 50 L.Ed.2d 76 (1976) (when the accused asked interrogating officers "do you think we need an attorney," officers were required to cease questioning); *People v. Alexander*, 261 N.W.2d 63, 64 (1977), *cert. denied*, 436 U.S. 958, 57 L.Ed.2d 1123 (1978) (interrogation must stop when defendant asks interrogating officers whether they thought she needed an attorney); *People v. Fish*, 660 P.2d 505, 509 (1983) ("an ambiguous indication of an interest in having counsel requires cessation of police interrogation"); LaFave & Israel, *Criminal Procedure* § 6.9, at 532 (1984) ("an inquiry whether the police officer

could recommend an attorney" is an assertion of right to counsel by implication). Accordingly, all further police-"initiated custodial interrogation" should have ceased until such time as counsel was made available to the defendant or until such time as defendant initiated further conversation with the deputies or S.B.I. agents. *Edwards*, at 485, 68 L.Ed.2d at 387.

Since the confession was the result of police initiated custodial interrogation which occurred after the defendant had invoked her right to counsel, the confession was not admissible, and in my opinion the defendant is entitled to a new trial.