STATE OF NORTH CAROLINA v. SHAWN MICHAEL JOYCE AND DEAN MORRIS WOLVINGTON

No. 9028SC1250

(Filed 3 December 1991)

1. **Criminal Law § 553 (NCI4th)— robbery and kidnapping— perjured testimony—mistrial denied**

     The trial court did not abuse its discretion in denying defendants' motions for a mistrial in a robbery and kidnapping prosecution where a State's witness, the assistant manager of the Little Caesar's which was robbed, identified defendant Joyce as the person carrying the knife in the restaurant. Although the testimony is clearly inconsistent, the record does not reflect that the District Attorney knew that the witness would recite false testimony and the District Attorney took appropriate steps to discredit the witness by immediately calling an officer to the stand to refute the identification and by discrediting the testimony in closing arguments.

     **Am Jur 2d, Criminal Law § 784; Evidence § 1082; Trial § 254.**

2. **Kidnapping § 1.2 (NCI3d)— kidnapping as part of robbery— removal of victim to another room—evidence of kidnapping sufficient**

     The trial court did not err by denying defendants' motion to dismiss second degree kidnapping charges where the charges arose from several robberies; all of the victims were moved from one room to another, where they were confined; and the removals were not an integral part of the crime nor necessary to facilitate the robberies since the rooms where the victims were ordered to go did not contain safes, cash registers or lock boxes which held property to be taken.

     **Am Jur 2d, Abduction and Kidnapping §§ 11 et seq.**

     **Seizure or detention for purpose of committing rape, robbery, or similar offense as constituting separate crime of kidnapping. 43 ALR3d 699.**

3. **Kidnapping § 1.3 (NCI3d)— kidnapping as part of robbery— instructions—no error**

     The trial court did not err in a prosecution for kidnapping and robbery by denying defendants' request to instruct the

jury in accordance with requested instructions which focused on the issue of whether the removal was an inherent and integral part of the robberies. When giving instructions, the trial court is not required to adopt the exact words used by an appellate opinion in setting forth the law on a particular subject.

**Am Jur 2d, Trial §§ 589, 594, 611, 713.**

4. **Constitutional Law § 323 (NCI4th) — robbery and kidnapping — speedy trial — no constitutional violation**

   There was no violation of defendant Joyce's Sixth Amendment right to a speedy trial where 269 days passed between arrest and trial, but defendant's failure to object to the length of his incarceration or to raise the speedy trial violation until trial indicates that his objection was one merely of form. Moreover, he cannot demonstrate how his defense was hampered or how the delay prejudiced him.

   **Am Jur 2d, Criminal Law §§ 652 et seq., 849 et seq.**

   **Waiver or loss of accused's right to speedy trial. 57 ALR2d 302.**

   **Accused's right to speedy trial under federal constitution — Supreme Court cases. 71 L. Ed. 2d 983.**

5. **Evidence and Witnesses § 887 (NCI4th) — robbery and kidnapping — out of court statements — admissible**

   The trial court did not err in a prosecution for robbery· and kidnapping by allowing a witness to read aloud prior written statements she had given to police officers where the testimony was offered to bolster the testimony she gave on the stand rather than to prove the truth of the matter asserted. The trial court properly gave the pattern jury instruction on corroboration to the jury when the statements were published and repeated the instruction in the final charge to prevent the jury from considering the statements as substantive evidence.

   **Am Jur 2d, Evidence § 500; Witnesses §§ 641 et seq.**

   **Admissibility of impeached witness' prior consistent statement — modern state criminal cases. 58 ALR4th 1014.**

STATE v. JOYCE

[104 N.C. App. 558 (1991)]

6. **Criminal Law § 382 (NCI4th)— robbery and kidnapping — references to codefendant — witness instructed to omit — no error**

The trial court did not err in a robbery and kidnapping prosecution by asking a witness if he could refrain from mentioning "the cousins" where the witness was.a cellmate of defendant Joyce and was testifying about an admission by Joyce, and defendant Wolvington was Joyce's cousin. A trial judge's duty to control the trial encompasses the authority and discretion to examine a witness for the purpose of clarifying or understanding his or her testimony. The court here was merely ensuring that the testimony would accurately reflect the substance of the statement given to the police and the questions posed by the judge were to protect both defendants.

**Am Jur 2d, Trial §§ 88, 113.**

7. **Evidence and Witnesses § 2947 (NCI4th) — witness's psychiatric records — not released to defendant — no error**

The trial court did not err by not releasing the psychiatric records of a State's witness to defendant where defendant had subpoenaed the records, the judge conducted an *in camera* inspection of the records, and the judge concluded that the records would not have a significant effect on the case. This witness was not the most important prosecuting witness in the case; the witness was cross-examined rigorously and extensively by both defense attorneys and both successfully elicited testimony from the witness about his long history of drug use, his violent behavior, and his criminal record; and any extra impeaching evidence gleaned from the mental health records would have been redundant.

**Am Jur 2d, Evidence §§ 518, 519, 546, 563, 569.**

**Cross-examination of witness as to his mental state or condition, to impeach competency or credibility. 44 ALR3d 1203.**

8. **Criminal Law § 113 (NCI4th) — discovery — State's failure to comply — sanctions**

The trial court did not abuse its discretion in the severity of sanctions imposed for the State's violation of discovery procedures where defendant Wolvington waived his probable cause hearing in exchange for an open file from the State, but a statement by a State's witness concerning a telephone call was not disclosed. The trial judge reprimanded the District

Attorney and refused to allow into evidence any testimony concerning the substance of the telephone conversation. The trial court has discretion in determining which of the remedies available should be applied under the circumstances. N.C.G.S. § 15A-910.

Am Jur 2d, Depositions and Discovery §§ 426, 427, 428 et seq.

Exclusion of evidence in state criminal action for failure of prosecution to comply with discovery requirement as to statements made by defendants or other nonexpert witnesses— modern cases. 33 ALR4th 301.

9. **Indictment and Warrant § 12.1 (NCI3d)— armed robbery— knife amended to firearm—no error**

There was no error in an armed robbery prosecution where the court on the first day of trial allowed the prosecutor's motion to amend the indictment to change "knife" to "firearm." The change does not alter the burden of proof or constitute a substantial change which would justify returning the indictment to the grand jury. Moreover, defendant cannot demonstrate any prejudice due to the amendment. N.C.G.S. § 15A-923(e).

Am Jur 2d, Indictments and Informations §§ 173 et seq.

Power of court to make or permit amendment of indictment with respect to allegations as to property, objects, or instruments, other than money. 15 ALR3d 1357.

10. **Criminal Law § 439 (NCI4th)— prosecutor's closing argument— characterization of defendant—no error**

There was no prejudicial error in a prosecution for robbery and kidnapping where the prosecutor commented in his closing argument, "if you're going to try the devil, you've got to go to hell for the witnesses."

Am Jur 2d, Trial §§ 193, 180.

Negative characterization or description of defendant, by prosecutor during summation of criminal trial, as ground for reversal, new trial, or mistrial—modern cases. 88 ALR4th 8.

APPEAL by defendants from Judgments entered 8 March 1990 by *Judge C. Walter Allen* in BUNCOMBE County Superior Court. Heard in the Court of Appeals 18 September 1991.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Valerie B. Spalding, for the State.*

*Smith, Patterson, Follin, Curtis, James, Harkavy & Lawrence, by John A. Dusenbury, Jr., for defendant appellant Shawn Michael Joyce.*

*Whalen, Hay, Pitts, Hugenschmidt, Master, Devereux & Belser, P.A., by David G. Belser and Barry L. Master, for defendant appellant Dean Morris Wolvington.*

COZORT, Judge.

Defendant Shawn Michael Joyce was convicted of one count of common law robbery, two counts of robbery with a dangerous weapon, and two counts of second-degree kidnapping. Defendant Dean Morris Wolvington was convicted of one count of common law robbery, two counts of robbery with a dangerous weapon, and three counts of second-degree kidnapping. Defendants jointly contend the trial court erred in denying defendants' motion for a mistrial based on the admission of false testimony by one of the State's witnesses, in failing to dismiss the second-degree kidnapping charges, and in refusing to honor defendants' request for specific instructions as to second-degree kidnapping. Additionally, defendants present individually several other issues for determination. We conclude that both defendants received a fair trial free from prejudicial error.

The State's evidence at trial tended to show that the charges stemmed from a series of three robberies occurring in 1989. The robberies were committed at the following locations and times: (1) the Little Caesar's Pizza restaurant in Skyland, North Carolina, on 4 February 1989; (2) the Oak Park Phillips 66 Convenience Store in Arden, North Carolina, on 2 April 1989; and (3) the Cedar Cliff Grocery in Fairview, North Carolina, on 7 May 1989. Defendants Joyce and Wolvington were arrested for the robberies based on a confession by Mark Moore, who participated in the robberies, and the statements of Linda Moore, the wife of Mark Moore. Mark Moore was apprehended on 27 May 1989 by the Buncombe County Sheriff's Department for robbing a Domino's Pizza Restaurant in

Arden. During questioning, Moore not only confessed to the Domino's robbery, but admitted his involvement in the robberies at Little Caesar's Pizza, the Oak Park Phillips 66 Convenience Store, and the Cedar Cliff Grocery. Moore signed statements implicating Joyce and Wolvington. At the time of trial, Mark Moore had already entered pleas of guilty to charges relating to the robberies. Also testifying for the State, Linda Moore stated that on the night her husband was taken into custody for the Domino's Pizza robbery, she was separated from him and then questioned. Linda Moore voluntarily informed the police that her husband had robbed Domino's. When asked about the other robberies, Linda Moore recalled that, on the nights of the three robberies, she saw her husband and both defendants divide money and other stolen items while sitting on the floor at defendant Wolvington's residence. On each occasion, the men told her what had transpired earlier in the evening by specifically discussing the robberies. Linda Moore recounted facts in great detail which were consistent with those given to the police by her husband.

Defendant Joyce took the stand on his own behalf. He presented an alibi for each of the evenings of the robberies. Every alibi involved Joyce's spending time with his cousin, defendant Wolvington. Defendant Wolvington also testified on his own behalf. His testimony mirrored that of Joyce. Vicki Wolvington corroborated her husband's alibi. Other evidence presented by both the State and the defense will be discussed in more detail as each issue is examined.

[1] We now turn to defendants' contentions on appeal. Both defendant Joyce and defendant Wolvington contend that the trial court erred in denying their motions for a mistrial based on alleged perjured testimony from State's witness James Dill. Defendants argue that James Dill's testimony destroyed the defendants' alibi theory, surprised the defense counsel and caused the defendants to suffer irreparable prejudice. Whether a mistrial should be granted pursuant to N.C. Gen. Stat. § 15A-1061 (1988) is a matter which rests in the sound discretion of the trial judge. *State v. Calloway*, 305 N.C. 747, 754, 291 S.E.2d 622, 627 (1982). Because such a ruling is within the trial judge's discretion, a mistrial is only appropriate where such serious procedural or other improprieties would make it impossible for a fair and impartial verdict to be rendered under the law. *Id.*

James Dill was the assistant manager at the Little Caesar's restaurant on the evening of 4 February 1989. Another employee, Lisa Yerkes, witnessed the robbery with Dill. Both Mr. Dill and Ms. Yerkes' testimony indicated that, as the two employees were preparing to close the restaurant at approximately 11:00 p.m., the doorbell rang. Two men entered the restaurant; one wore panty-hose over his head, and the other wore a blue ski mask. One of the perpetrators carried a knife; one held a gun. The man with the knife pointed it at Ms. Yerkes and ordered the workers into the office. The man holding the gun told Dill to come out of the office and to open the safe, then pushed Dill back into the office once the safe had been opened. The gunman ordered the employees to "drop [their] pants," and to throw their wallets onto the floor. Dill and Yerkes complied. Despite Dill's instructions on how to open the cash register, the gunman failed to open the machine. When headlights appeared at the front of the building, the two robbers exited out the back door.

Yerkes' and Dill's testimony was essentially identical, except for an identification made by Dill at trial. On direct examination, James Dill testified, "I asked [the robber] what he was doing [there] because he looked familiar. I knew who he was." When the District Attorney responded, "You knew who the person in the stocking was?," Dill replied, "Yes." Dill stated on cross-examination that the person carrying the knife in Little Caesar's was "Shawn Joyce." Dill went on to say that he had given this information to a black detective who investigated the robbery. Dill admitted, however, that he had never told the District Attorney or the detective in charge of the investigation about the identification. Defendants moved for a mistrial, since subsequent testimony by two State's witnesses would show that defendant Joyce was never in the Little Caesar's restaurant. Mark and Linda Moore would testify later in the trial that Mark Moore and Dean Wolvington were the robbers at Little Caesar's and that Shawn Joyce remained in the car during the entire robbery. The trial court denied the motion and ruled that Dill's testimony would be an issue of credibility for the jury to decide, since at that point in the trial, no evidence was before the court to show the truth or falsity of Dill's testimony. The District Attorney subsequently called Officer Patrick of the Asheville Police Department immediately to the stand to cast doubt on Dill's identification. Officer Patrick was the only black officer who investigated the Little Caesar's robbery. He testified that

Dill had never at any time indicated to him or to any other officer that he could identify either robber. Additionally, the District Attorney told the jury during closing argument that Dill's identification testimony was "not worth believing," because "[i]t couldn't have been that way."

The law is clear that a prosecutor's presentation of known false evidence, allowed to go uncorrected, is a violation of a defendant's right to due process. *Napue v. Illinois*, 360 U.S. 264, 269, 3 L.Ed.2d 1217, 1221-22 (1959). The District Attorney has a duty to correct any false evidence which in any reasonable likelihood could affect the jury's decision. *Id.* Conversely, if the evidence is an inconsistency rather than a knowing falsehood, such contradictions in the State's evidence are for the jury to consider and resolve. *State v. Edwards*, 89 N.C. App. 529, 531, 366 S.E.2d 520, 522 (1988). Although Dill's testimony was clearly inconsistent in this case, the record does not reflect that the District Attorney knew Dill would recite false testimony. Furthermore, the District Attorney took appropriate steps to discredit Dill by calling Officer Patrick immediately to the stand to refute Dill's identification. The State also discredited Dill's testimony in closing argument. With no evidence that the State knowingly used false evidence, the District Attorney's remedial measures in this case were sufficient to correct the false evidence. The inconsistencies in the evidence were properly left for the jury's consideration. Consequently, the trial court did not abuse its discretion in denying defendants' motion for a mistrial.

[2] Both defendants next submit that the trial court erred in failing to dismiss the second-degree kidnapping charges based on the insufficiency of the State's evidence. Defendants claim the kidnapping charges should have been dismissed because the victims were not "removed" within the meaning of the statute. We disagree. The kidnapping statute provides:

> (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
>
> > (1) Holding such other person for a ransom or as a hostage or using such other person as a shield; or

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person.

(4) Holding such other person in involuntary servitude in violation of G.S. 14-43.2.

N.C. Gen. Stat. § 14-39 (Cum. Supp. 1991). Often when a defendant is charged with kidnapping, and the charge is based on the defendant's confinement, restraint, or removal of the victim for the purpose of facilitating the commission of a felony, he or she is also charged with the underlying felony. *State v. Parker*, 81 N.C. App. 443, 447, 344 S.E.2d 330, 332 (1986). To prevent any double jeopardy violation from arising, our Supreme Court has declared it impermissible "to make a restraint which was an inherent, inevitable element of another felony, such as armed robbery or rape, a distinct offense of kidnapping thus permitting conviction and punishment for both crimes." *State v. Irwin*, 304 N.C. 93, 102, 282 S.E.2d 439, 446 (1981). The facts of *Irwin* showed that the defendant and an accomplice entered a drug store which had a main room with a fountain counter and another area with a prescription counter. In the rear of the store was an office and a separate prescription room. The accomplice forced the employee to walk from her position near the fountain cash register to the back of the store where the prescription counter and safe were located. He then made the victim sit on the step leading to the prescription room. All the activity occurred in the main room of the store. The *Irwin* court, reversing the kidnapping conviction, found the employee's removal to the back of the store to be "an inherent and integral part of the attempted armed robbery," since the employee was needed to open the safe. *Id.* at 103, 282 S.E.2d at 446.

In *State v. Davidson*, 77 N.C. App. 540, 335 S.E.2d 518 (1985), this Court upheld the denial of a motion to dismiss kidnapping charges in a case with facts similar to the case at bar. *Davidson* involved an armed robbery in which three people in a clothing store were forced at gunpoint to go from the front of the store to a dressing room in the rear some thirty to thirty-five feet away. The Court found that since none of the property was kept in the dressing room, it was not necessary to move the victims there in order to commit the robbery. *Id.* at 543, 335 S.E.2d at 520.

The Court reasoned that removal of the victims to the dressing room was not an integral part of the robbery, but constituted "a separate course of conduct designed to remove the victims from the view of passersby who might have hindered the commission of the crime." *Id.* Thus, for a kidnapping charge to stand, the removal of the victim from one place to another must clearly be a removal which is independent from the movement necessary for the commission of the underlying felony.

In the present case, defendant Joyce was charged with two counts of kidnapping which arose from the Oak Park Convenience Store robbery and the Cedar Cliff Grocery robbery. Defendant Wolvington faced those same kidnapping charges plus additional charges relating to the Little Caesar's Pizza robbery. First, in the Little Caesar's robbery, Lisa Yerkes and James Dill were ordered to move from the front of the restaurant back into the office. Second, in the Oak Park Convenience Store robbery, employee John Moss testified that the robbers forced him from the game room into the back of the store and shut him in the bathroom. Lastly, Amy Zimmerman, the cashier at the Cedar Cliff Grocery, testified that the perpetrators moved her out of the main store area, pushed her into the bathroom, and forced her to lock the door. These facts are different from the facts in *Irwin* and are more comparable to those in *Davidson.* All victims in the case at bar were moved from one room to another room where they were confined. The removals were not an integral part of the crime nor necessary to facilitate the robberies, since the rooms where the victims were ordered to go did not contain safes, cash registers or lock boxes which held property to be taken. As a result, we distinguish *Irwin* and find the evidence presented sufficient to prove the second-degree kidnapping charges. The trial court did not err in denying defendants' motion to dismiss the second-degree kidnapping charges.

[3] Finally, both defendants assert that the trial court erred in denying their request to instruct the jury in accordance with defendants' proposed instructions on second-degree kidnapping. Prior to the jury charge, defendant Wolvington joined in defendant Joyce's proposed written jury instruction on second-degree kidnapping. The proposed instruction included language taken from the *Irwin* case. The language focused specifically on the issue of whether the removal of the victims in each of the three cases was an inherent and integral part of the armed robberies, or whether the removal was

an act separate from the underlying crime. The trial judge declined to tender the offered instruction and charged the jury according to the pattern instruction on kidnapping.

Where the trial judge's charge fully instructs the jury on all substantive areas of the case, and defines and applies the law thereto, it is sufficient. *State v. McNeil*, 47 N.C. App. 30, 40, 266 S.E.2d 824, 830 (1980), *cert. denied*, 450 U.S. 915, 67 L.Ed.2d 339 (1981). When giving instructions, the trial court is not required to adopt the exact words used by an appellate opinion in setting forth the law on a particular subject. *State v. Vaughan*, 59 N.C. App. 318, 321, 296 S.E.2d 516, 518 (1982), *disc. review denied*, 307 N.C. 582, 299 S.E.2d 650 (1983). The pattern jury instructions given in this case varied only slightly from the instructions offered by defendants. Furthermore, the trial court was not required to recite the exact language from *Irwin* in charging the jury. In *State v. Clinding*, 92 N.C. App. 555, 374 S.E.2d 891 (1989), this Court found that the general statutory language of removal was enough to satisfy " 'the requirement of *Irwin* that the jury find that the removal be separate and apart from the other felony in order to find [defendant] guilty of kidnapping.' " *Id.* at 561, 374 S.E.2d at 894 (citation omitted), citing *State v. Battle*, 61 N.C. App. 87, 93, 300 S.E.2d 276, 279 (1983). This assignment of error has no merit.

[4] We now turn to issues raised separately by each defendant. Defendant Joyce initially argues the trial court erred in refusing to dismiss all charges against him on the ground that he was denied his right to a speedy trial. North Carolina's Speedy Trial Act, N.C. Gen. Stat. § 15A-701, *et seq.*, was repealed 1 October 1989, thus, we now apply federal constitutional standards to speedy trial issues. The right to a speedy trial guaranteed by the sixth amendment applies to the states via the fourteenth amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 222, 18 L.Ed.2d 1, 7-8 (1967). To determine whether a defendant's right to a speedy trial has been denied, four factors must be examined: the length of the delay, reasons for the delay, defendant's assertion of the right, and prejudice suffered by the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 33 L.Ed.2d 101, 117 (1972). These four factors are considered together to determine under the circumstances whether a sixth amendment violation has occurred. *Moore v. Arizona*, 414 U.S. 25, 26-27, 38 L.Ed.2d 183, 185-86 (1973). Defendant Joyce encountered a delay of 269 days between the date of his arrest and the date of trial. The reason for the delay was partially due to the overloaded

trial docket, and partially because Joyce's case was joined with defendant Wolvington's case. Prior to and following the joinder, codefendant Wolvington made motions for continuances which were granted. Defendant Joyce did not contest these motions or object to the delay at that time. The law indicates that a defendant who fails to demand a speedy trial does not forever waive the right. *Barker*, 497 U.S. at 528, 33 L.Ed.2d at 115. The *Barker* decision, however, places great emphasis on whether the defendant asserted the right at an early stage, or objected as a matter of form. *Id.* at 531-32, 33 L.Ed.2d at 117-18. Defendant Joyce's failure to object to the length of his incarceration or to raise the speedy trial violation until trial indicates his objection was one merely of form. As for prejudice, defendant Joyce cannot demonstrate how his defense was hampered or how the delay prejudiced him. Thus, we find no sixth amendment violation.

**[5]** Defendant Joyce further alleges the trial court erred in admitting into evidence the out-of-court statements given to police by State's witness Linda Moore. Linda Moore testified to her presence at codefendant Wolvington's home following the three robberies where she observed her husband and the defendants dividing up the proceeds from the robberies. Following cross-examination by both defendants, the prosecutor had Moore read aloud prior written statements she gave to the police officers. The written statements were introduced into evidence and published to the jury. Defendant argues that the statements constituted inadmissible hearsay because they did not logically rebut or contradict defendant's contention that her testimony was recently fabricated. We disagree. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (1988). In the present case, the prior statements in question were not offered to prove the truth of the matter asserted; rather, they were offered to bolster the testimony which Linda Moore gave on the stand. If a proper foundation is laid, prior consistent statements are admissible as corroborative evidence even when the witness has not been impeached if the statement in fact corroborates the testimony. *State v. Martin*, 309 N.C. 465, 476, 308 S.E.2d 277, 284 (1983). "Corroborative" has been defined by our courts as meaning " 'to strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence.' " *State v. Riddle*, 316 N.C. 152, 157, 340 S.E.2d 75, 78 (1986), citing *State*

*v. Higginbottom*, 312 N.C. 760, 769, 324 S.E.2d 834, 840 (1985). Linda Moore's statement served to corroborate her earlier testimony. The trial court properly gave the pattern jury instruction on corroboration to the jury when the statements were published and repeated the instruction in the final charge to prevent the jury from considering the statements as substantive evidence. The trial court did not err in admitting this testimony into evidence.

**[6]** Defendant Joyce next argues the trial court erred by instructing State's witness Charles Crain as to the manner in which to testify. Charles Crain was a cell mate of defendant Joyce while both were incarcerated in the Buncombe County Jail. Crain testified regarding an alleged admission by Joyce which detailed Joyce's involvement in the robberies. Crain's statement was reduced to writing by a police officer and offered at trial. An examination of the transcript indicates that following a voir dire of Crain, the trial judge redacted Crain's written statement to delete any reference to Shawn Joyce's "cousin" or "cousins." The trial judge took these measures because codefendant Wolvington was Shawn Joyce's cousin. The following exchange then occurred:

> THE COURT: Now, Mr. Crain if the Court requests you to, can you refrain from making certain statements. And this is to everybody present so you'll know I'm not trying to ask you to do something you shouldn't do. Could you in testifying, when Mr. Bidwell is asking you questions, or to Mr. Belser or Mr. Dusenbury, such that it's important that you not mention the cousins, that the only person that you can mention would be Mr. Joyce, or Shawn?
>
> WITNESS: Yeah.
>
> COURT: Now, do you think you can limit your testimony to him and not mention anything about discussing his cousin or cousins?
>
> WITNESS: I don't know. I mean, I—
>
> COURT: You would attempt to do that?
>
> WITNESS: Yeah, I guess I would, yeah.

Defendant Joyce argues that the lower court essentially fashioned the witness's testimony for him and that such instructions amounted to advocacy against defendant by the court and violated defendant's right to due process and to an impartial tribunal. We disagree.

STATE v. JOYCE

[104 N.C. App. 558 (1991)]

A trial judge's duty to control the trial encompasses the authority and discretion to examine a witness for the purpose of clarifying or understanding his or her testimony. *State v. Redfern*, 98 N.C. App. 129, 131, 389 S.E.2d 846, 847 (1990). In the case now before us, the questions posed by the trial judge were to protect defendant Joyce as well as codefendant Wolvington. The court was merely ensuring that Crain's testimony would accurately reflect the substance of the statement given to police. There was no error.

Turning now to defendant Wolvington's separate issues, we first address his contention that the trial court committed error by admitting into evidence the written statements of Linda Moore and Mark Moore. Defendant Wolvington objects on the theory that as past recollections recorded, the statements could not have been entered into evidence except by an adverse party. We find this assignment of error subject to the same analysis we used above in discussing codefendant Joyce's objection to the admission and publication of Linda Moore's written statement. Because the statements were corroborative and not substantive, their admission into evidence and publication to the jury did not constitute prejudicial error.

[7] Defendant Wolvington additionally contends that the trial court committed error in denying his request to review the psychiatric records of State's witness Charles Crain for use at trial. Defendant asserts that the court's refusal to allow him use of the records for impeachment deprived him of his right to due process. Defendant subpoenaed the mental health records of Charles Crain from the Blue Ridge Mental Health Center. The trial judge conducted an *in camera* inspection of the records and concluded they did not have a significant effect on the case which would warrant their release to the defendant. Defendant reviewed the psychiatric records during his preparation of the record on appeal. The defendant contends the records contained many fruitful areas for impeachment on cross-examination. These areas included a documented history of drug and alcohol addiction; use of multiple drugs (cocaine, valium, and xanax); and problems with bad temper and depression. Defendant argues the withholding of the records constituted prejudice which was not harmless beyond a reasonable doubt. We cannot agree.

Defendant compares the case at bar to *Chavis v. North Carolina*, 637 F.2d 213 (4th Cir. 1980), in which the Fourth Circuit Court

of Appeals reversed and remanded the conviction of Benjamin Chavis and nine co-petitioners. The *Chavis* court determined that suppression of psychiatric records of two of the prosecution's crucial witnesses denied defendants' due process rights in light of their specific request for "psychiatric or other reports which might tend to reflect on the credibility or competency of . . . prospective witnesses." *Id.* at 224-25. The court in *Chavis* further indicated that the test of whether a defendant's due process rights have been violated by withholding such records is "if there was a 'reasonable possibility' that the undisclosed evidence would have materially affected the verdict." *Id.* at 223. The case at bar is distinguishable from *Chavis*. First, Charles Crain was not the most important prosecuting witness in the current case, unlike the witnesses in *Chavis* whose testimony constituted the very foundation of the State's case. Here, the main prosecution witnesses were Linda and Mark Moore; Crain only served to buttress their testimony. Furthermore, a careful examination of the record discloses that Crain was cross-examined rigorously and extensively by both defense attorneys. Both successfully elicited testimony from Crain on cross-examination about his long history of drug use, his violent behavior, and his criminal record. Any extra impeaching evidence gleaned from the mental health records would have been redundant. We therefore conclude that defendants had ample weaponry in their cross-examination arsenal to attack Crain. Defendant Wolvington's due process rights were not violated, and he cannot demonstrate how he was prejudiced by the suppression of Crain's mental health records.

[8] Defendant also assigns as error the trial court's failure to impose adequate sanctions against the State for the District Attorney's violation of discovery procedures. Defendant Wolvington requested sanctions pursuant to N.C. Gen. Stat. § 15A-910 (1988) which allows the court to sanction a party for noncompliance with discovery procedures. The request for sanctions in this case arose from the District Attorney's alleged "sandbagging" of certain evidence. Defendant Wolvington waived his probable cause hearing in exchange for an open file from the State. When Lisa Yerkes testified for the State, however, a statement came to light which had not previously been brought to defendant Wolvington's attention. The statement concerned the substance of a telephone call which Yerkes received from codefendant Joyce on the night of the Little Caesar's robbery while she was working at the restaurant.

STATE v. JOYCE

[104 N.C. App. 558 (1991)]

The statement was not found in the discovery file and defendant had no knowledge about the phone call prior to trial because of the District Attorney's failure to disclose the material. A voir dire examination of Ms. Yerkes indicated that the District Attorney had spoken to Yerkes about her testimony, including the phone conversation, many times prior to trial. The trial judge reprimanded the District Attorney for the violation, and refused to allow into evidence any testimony concerning the substance of the telephone conversation which occurred between Ms. Yerkes and Wolvington's codefendant Shawn Joyce. N.C. Gen. Stat. § 15A-910 (1988) allows the trial judge to sanction parties for discovery violations and enumerates various sanctions which may be ordered. The trial court has discretion in determining which of the remedies available should be applied under the circumstances. State v. Taylor, 311 N.C. 266, 271, 316 S.E.2d 225, 228 (1984). One of the options available to the trial judge is to "[p]rohibit the party from introducing evidence not disclosed." N.C. Gen. Stat. § 15A-910(3) (1988). The trial judge in this case took such a measure by excluding from evidence any content of the telephone conversation. We find no abuse of the trial court's discretion.

[9] Defendant next argues that the trial court erred in allowing the District Attorney's motion to amend indictment No. 89-CRS-1152. On the first day of trial, the prosecutor moved to amend the indictment which charged defendant for robbery with a dangerous weapon in the Oak Park Convenience Store. The State sought to amend the indictment to change the word "knife" to "firearm" in the charge. N.C. Gen. Stat. § 15A-923(e) (1988) provides: "A bill of indictment may not be amended." The term "amendment" in subsection (e) is defined as any change in the indictment which would substantially alter the charge set forth in the indictment. State v. Bailey, 97 N.C. App. 472, 475, 389 S.E.2d 131, 133 (1990). The change made in this case from "knife" to "firearm" does not alter the burden of proof or constitute a substantial change which would justify returning the indictment to the grand jury. Defendant also cannot demonstrate how he suffered any prejudice due to this amendment. This assignment of error is dismissed.

[10] Defendant's final argument challenges comments made by the District Attorney during closing argument. Defendant claims the prosecutor's characterization of defendant prejudiced him. In his closing, the prosecutor commented, "if you're going to try the devil, you've got to go to hell for the witnesses." This exact phrase

has been found to be no prejudicial error in *State v. Hudson*, 295 N.C. 427, 435, 245 S.E.2d 686, 692 (1978).

No error.

Judges ORR and LEWIS concur.