STATE OF NORTH CAROLINA
v.
THOMAS WILLOUGHBY, SR.
No. COA08-1416.
Court of Appeals of North Carolina.
Filed May 19, 2009.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Lauren M. Clemmons, for the State
Glenn Gerding, for defendant-appellant.
STEELMAN, Judge.
The trial court did not abuse its discretion by not declaring a mistrial ex mero motu. Defendant failed to demonstrate that his counsel was ineffective in failing to move for a mistrial.

I. Factual and Procedural Background
On 7 January 2007, Officer Kimberly Carnes of the Jacksonville Police Department received notification that a sexual molestation may have occurred. Officer Carnes went to the victim's home and interviewed her. The victim (M.N.M.), aged 13, told Officer Carnes that while her mother was at church, defendant, who was her uncle, came into her bedroom and began massaging her legs. M.N.M. further told Officer Carnes that defendant went up her legs and into her shorts and put his fingers "inside of her." At trial, M.N.M. testified that her mother was at church, and she was asleep when defendant came into her room and woke her up. M.N.M. testified that defendant started massaging her feet, and then:
he worked his way up my legs and he pulled my shorts and my panties over at the same time and he put his hand in there, and he, like, kind of  I don't know what it's called, but he separate  he was trying to, like, separate it out, trying to push his hand away, and I said stop. And he said he just wanted to see something, and I tried to push his hand away, and I kept saying stop. And then, after that, he got up and he said he was sorry.
The prosecutor then asked M.N.M. if defendant "put his finger inside of you?" M.N.M. responded:
No, but he tried to  I don't know what it's called, but he tried to separate it, you know, like that's what it felt like. I wasn't really looking down there, but that's what it felt like, he was just trying to separate it.
The prosecutor then showed M.N.M. a statement she wrote for police in an attempt to refresh her memory. The prosecutor then asked M.N.M. if defendant put his finger inside of her. M.N.M. responded:
No. When I wrote "inside" on my statement at the time, you know, I was like all over the place. So I really didn't want to go into too much detail. What I meant by inside is, he put his fingers inside of my pants, inside of my shorts. So I didn't mean penetration.
M.N.M. then explained that defendant "touched the sides of . . . [her] [v]agina." "It was like he tried to, like, pull it over."
M.N.M. then testified briefly that defendant had previously touched her, sometime around Thanksgiving in 2005 or 2006. There was then a brief recess. When the trial resumed, M.N.M. resumed her testimony, and the prosecutor presented M.N.M. with Exhibit 2, which was an illustration of the female anatomy. The prosecutor resumed questioning M.N.M. regarding the events of 7 January 2007. Using the exhibit, M.N.M. testified that defendant "used his fingers to move my labias over, and he kind of  he only stuck his finger a little bit in my vagina." On cross-examination, the defense reminded M.N.M. that she said defendant did not put his finger inside of her. M.N.M. agreed, but explained that:
He touched it a little bit. I didn't say he put it all the way inside of me, because when you say penetration, I thought that it means sticking his finger all the way inside my vagina; that's what I thought it meant.
Later in the trial, Detective Len Condry, an investigator with the Jacksonville Police Department, was asked if he was "surprised" when M.N.M. testified that defendant did not insert his finger into her vagina. Detective Condry answered that "when you deal with semantics with a pre-teen or early teen girl, insertion to her, as she described to you, is full insertion." Defendant's attorney then asked if, during a recess, "didn't y'all show her a picture of the vagina?" Detective Condry admitted to doing so, explaining that "[w]e clarified exactly what we had. We wanted to make sure we were dealing with what we thought we were." Defendant's attorney asked if the purpose was to "make sure she said that, he put his finger inside my vagina." Detective Condry replied "[n]o."
Defendant was convicted of a statutory sex offense in which the defendant is more than six years older than the victim, and two-counts of taking indecent liberties with a child. The trial court sentenced defendant to concurrent terms of sixteen to twenty months imprisonment for each count of indecent liberties, with defendant's sentences to be served consecutively to a term of 200 to 249 months imprisonment for the statutory sex offense. Defendant appeals.

II. Mistrial Ex Mero Motu

In his first argument, defendant contends that during the recess, M.N.M. was "coached" as to her testimony, which caused substantial and irreparable damage to his case. He asserts that the trial court should have declared a mistrial ex mero motu. We disagree.
A trial court may declare a mistrial on its own motion pursuant to N.C. Gen. Stat. § 15A-1061 (2007). Whether to declare a mistrial is a decision:
within the sound discretion of the trial court and its ruling will not be disturbed on appeal unless it is so clearly erroneous as to amount to a manifest abuse of discretion. It is appropriate for a trial court to declare a mistrial only when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict under the law.
State v. Bowman, 349 N.C. 459, 472, 509 S.E.2d 428, 436 (1998)(internal quotations and citations omitted), cert. denied, 527 U.S. 1040, 144 L. Ed. 2d 802 (1999); see also N.C. Gen. Stat. § 15A-1063 (2007)(A judge may declare a mistrial if it would be "impossible for the trial to proceed in conformity with law[.]").
In the instant case, the record is devoid of any evidence that M.N.M.'s testimony was coached or falsified. While there may have been inconsistencies in M.N.M.'s testimony, M.N.M. explained on cross-examination that these inconsistencies were due to her misunderstanding of the terms "inside" and "penetration." Detective Condry also testified that teens and pre-teens would not understand "semantics" the same as a "trained investigator" and specifically denied coaching M.N.M.'s testimony. The alleged inconsistencies in M.N.M.'s testimony, as well as the credibility of Detective Condry's explanation for these inconsistencies, were matters for the jury to determine and did not necessitate a mistrial. See State v. Joyce, 104 N.C. App. 558, 565, 410 S.E.2d 516, 520 (1991), cert. denied, 331 N.C. 120, 414 S.E.2d 764 (1992)(A prosecutor has a duty to correct any false evidence that might influence a jury's decision; however, inconsistencies in the evidence are properly left for the jury's consideration).
This argument is without merit.

III. Ineffective Assistance of Counsel
In his second argument, defendant contends that his trial counsel's failure to move for a mistrial constitutes ineffective assistance of counsel. We disagree.
To successfully assert an ineffective assistance of counsel claim, defendant must satisfy a two-prong test.
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial,a trial whose result is reliable.
State v. Braswell, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (quoting Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)). We conclude that counsel's failure to request a mistrial did not meet the constitutional standard for ineffective assistance under Strickland and Braswell. As discussed previously herein, M.N.M., as well as Detective Condry, were cross-examined by defendant's counsel regarding the inconsistencies in M.N.M.'s testimony. Any contradictions in M.N.M.'s testimony were for the jury to resolve. Thus, a mistrial was not warranted. We hold that counsel was not ineffective for failing to move for a mistrial.
This argument is without merit.
NO ERROR.
Judges HUNTER, ROBERT C. and JACKSON concur.
Report per Rule 30(e).