An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-196

NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2014

STATE OF NORTH CAROLINA

    v.                            Robeson County

                                   Nos. 07 CRS 051866-67

CHANNING ALLAMAR BLACKWELL

Appeal by Defendant from judgments entered 3 May 2012 by Judge Tanya T. Wallace in Robeson County Superior Court. Heard in the Court of Appeals 28 August 2013.

> *Attorney General Roy Cooper, by Special Deputy Attorney General James A. Wellons, for the State.*
>
> *Duncan B. McCormick, for Defendant.*

DILLON, Judge.

Channing Allamar Blackwell ("Defendant") appeals from judgments entered 3 May 2012 convicting him of two counts of attempted murder, two counts of assault with a deadly weapon with intent to kill inflicting serious injury, one count of attempted robbery with a dangerous weapon, and one count of discharge of a weapon in an occupied vehicle. We find no error, in part, and we dismiss, in part.

The evidence of record tends to show the following: Defendant worked at a Zaxby's restaurant location in Robeson County with Sherry Neldon and Patsy Hardin. In the early morning hours of 31 March 2007, Ms. Neldon, who was an assistant manager at the restaurant, left work – accompanied by Ms. Hardin – to make a night deposit of over $3,000 at a local bank on behalf of her employer. Upon arriving at the bank, Ms. Neldon exited the vehicle to make the deposit. Ms. Hardin also got out and walked toward the back of the vehicle, at which time she saw a tall, slim African American male approaching and yelling expletives. Both Ms. Neldon and Ms. Hardin got back into the vehicle, and, as Ms. Neldon struggled to get the vehicle into gear, the man fired a gun. The first bullet shattered the driver's side window. The man then tried to get into the vehicle by pointing the gun at Ms. Neldon's head through the window. As Ms. Neldon and the man struggled for several seconds, she heard another three or four gunshots. Ms. Neldon was then able to get the vehicle into gear and drive away.

One of the bullets had struck Ms. Neldon in the abdomen, lodging in her spine, which resulted in the required removal of part of her lower intestine. Ms. Neldon had to learn to walk again and needed the assistance of a cane. Another bullet

struck Ms. Hardin in the back, which resulted in the required removal of Ms. Hardin's left kidney, part of her lower intestine, and her spleen.

A witness saw a person fleeing the scene on foot toward a cemetery. Officer Steve Smith responded to the scene and approached a building near the cemetery. Officer Smith saw Defendant "peeping around the corner" of the building. Defendant then "took off running in the opposite direction[.]" Officer Smith apprehended Defendant after Defendant complied with his command to "get down." However, even after Defendant "got down[,] . . . he was constantly moving his hands and . . . [h]e tried to roll back[.]" Another officer arrived at the scene and handcuffed Defendant.

A third officer, Officer Jennifer White, arrived with a police dog. The dog "picked up a cap and a few minutes later she found a handgun that was buried next to the vegetation." The gun was discovered "[m]aybe one feet, two feet" from the place "[D]efendant went down at [the] command" of Officer Smith.

Defendant was indicted on a number of charges and was tried during the 30 April 2012 session of Robeson County Superior Court, the Honorable Tanya Wallace presiding. On 3 May 2012, the jury returned verdicts finding Defendant guilty of the six

crimes named above. The trial court entered two judgments consistent with the jury's verdicts. In the first judgment, the trial court consolidated one count of attempted murder and one count of assault with a deadly weapon with intent to kill inflicting serious injury with the count of attempted robbery with a dangerous weapon, and sentenced Defendant to 220 to 273 months incarceration. In its second judgment, the trial court consolidated the second count of attempted murder and second count of assault with a deadly weapon with intent to kill inflicting serious injury with the count of discharge of a weapon into occupied property, and sentenced Defendant to a second term of 220 to 273 months incarceration, with both terms to be served consecutively. From these judgments, Defendant appeals.

I: Petition for Discharge of Imprisonment

In Defendant's first argument on appeal, he contends the trial court lacked jurisdiction, because Defendant's appeal was pending, to enter its Order of 13 July 2012 denying his Petition for Discharge of Imprisonment (the "Petition") which he filed pursuant to Chapter 23, Art. 4, of the North Carolina General Statutes. We believe this Court does not have jurisdiction to consider the issue on appeal.

Appellate Procedure Rule 4(a) provides that "[a]ny party entitled by law to appeal from a judgment or order of a superior or district court rendered in a criminal action may take appeal by . . . filing notice of appeal with the clerk of superior court and serving copies thereof upon all adverse parties . . . ." N.C. R. App. P. 4(a). Compliance with the requirements for entry of notice of appeal is jurisdictional. *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 197-98, 657 S.E.2d 361, 365 (2008). "A jurisdictional default . . . precludes the appellate court from acting in any manner other than to dismiss the appeal." *Id.* at 197, 657 S.E.2d at 365. Nothing in the record before us indicates that Defendant gave notice of appeal from the trial court's denial of the Petition. Accordingly, we dismiss this portion of Defendant's appeal.

## II: Right to a Speedy Trial

In Defendant's second argument on appeal, he contends Defendant's constitutional right to a speedy trial was denied because there was a five year delay in bringing his case to trial.[1] We disagree.

---

[1] Defendant also asserts that he "demanded a speedy trial pursuant to Section 15A-711(c)," but admits that the "prosecutor prepared at least nine applications and writs of habeas corpus for the purpose of prosecution between August 2010 and April 2012[,]" and, therefore, "[Defendant] is asserting only a

The right of every person formally accused of crime to a speedy and impartial trial is secured by the fundamental law of this State, *State v. Hollars*, 266 N.C. 45, 145 S.E.2d 309 (1965), and guaranteed by the Sixth Amendment to the federal constitution, made applicable to the State by the Fourteenth Amendment, *Klopfer v. North Carolina*, 386 U.S. 213, 18 L. Ed. 2d 1 (1967). "[I]n considering whether the defendant has been prejudiced because of a delay between indictment and trial, this Court noted that a speedy trial serves (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *State v. Grooms*, 353 N.C. 50, 63, 540 S.E.2d 713, 722 (2000), *cert. denied*, 534 U.S. 838, 151 L. Ed. 2d 54 (2007).

"To determine whether a defendant's right to a speedy trial has been denied, four factors must be examined: the length of the delay, reasons for the delay, defendant's assertion of the right, and prejudice suffered by the defendant." *State v. Joyce*, 104 N.C. App. 558, 568, 410 S.E.2d 516, 522 (1991), *cert. denied*, 331 N.C. 120, 414 S.E.2d 764 (1992). "These four factors are considered together to determine under the

---

violation of his state and federal constitutional rights."

circumstances whether a sixth amendment violation has occurred." *Id.* "[T]he length of the delay is not *per se* determinative of whether the defendant has been deprived of his right to a speedy trial." *State v. Grooms*, 353 N.C. at 62, 540 S.E.2d at 721. A long delay between accusation and trial, however, triggers consideration of the other factors. *State v. Webster*, 337 N.C. 674, 678, 447 S.E.2d 349, 351 (1994). "[The] defendant has the burden of showing that the delay was caused by the neglect or willfulness of the prosecution." *Grooms*, 353 N.C. at 62, 540 S.E.2d at 721 (2000). "A criminal defendant who has caused or acquiesced in a delay will not be permitted to use it as a vehicle in which to escape justice." *Id.* at 63, 540 S.E.2d at 722 (2000) (quoting *State v. Tindall*, 294 N.C. 689, 695-96, 242 S.E.2d 806, 810 (1978)).

Defendant argues on appeal that because the "case was tried five years after [Defendant's] arrest . . . [t]he delay . . . may have hindered his ability to locate witnesses who could corroborate his testimony." This, Defendant asserts, violated Defendant's right to a speedy trial. However, Defendant's argument on appeal fails to assert, in any way, how "the delay was caused by the neglect or willfulness of the prosecution." *Grooms*, 353 N.C. at 62, 540 S.E.2d at 721. Moreover, the record

tends to show the opposite may have been, at least partially, true. In this case, the State sought continuances due to a full docket, an unavailable witness, and a coinciding week-long first degree murder case; Defendant sought or agreed to continuances because counsel was unavailable or needed to review the case file. Defendant also sought a continuance because replacement counsel needed additional time to prepare. The record in this case does not affirmatively show that the delay was due to the neglect or willfulness of the prosecution; rather, several continuances benefitted defense counsel. Because Defendant has failed to meet his burden of showing that "the delay was caused by the neglect or willfulness of the prosecution[,]" *Grooms*, 353 N.C. at 62, 540 S.E.2d at 721, we find Defendant's argument without merit.

## III: Right to Self-Representation

In Defendant's third argument on appeal, he contends the trial court erred by failing to allow Defendant to proceed *pro se*. We disagree.

"It is well settled that an accused is entitled to the assistance of counsel at every critical stage of the criminal process as constitutionally required under the Sixth and Fourteenth Amendments to the United States Constitution." *State*

*v. Taylor*, 354 N.C. 28, 35, 550 S.E.2d 141, 147 (2001), *cert. denied*, 535 U.S. 934, 122 S. Ct. 1312, 152 L. Ed. 2d 221 (2002). "[W]aiver of the right to counsel and election to proceed *pro se*[,]" however, "must be expressed clearly and unequivocally." *State v. Thomas*, 331 N.C. 671, 673, 417 S.E.2d 473, 475 (1992) (citation and quotation marks omitted). "Once a defendant clearly and unequivocally states that he wants to proceed *pro se*, the trial court, to satisfy constitutional standards, must determine whether the defendant knowingly, intelligently, and voluntarily waives the right to in-court representation by counsel." *Id.* at 673, 417 S.E.2d at 476. "In order to determine whether the waiver meets that standard, the trial court must conduct a thorough inquiry[,] [and] [t]his Court has held that the inquiry required by N.C.G.S. § 15A-1242 satisfies constitutional requirements." *Id.*

N.C. Gen. Stat. § 15A-1242 (2011) provides the following:

> A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:
>
> (1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
>
> (2) Understands and appreciates the

consequences of this decision; and

(3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

*Id.*

In this case, Defendant filed a *pro se* handwritten document on 19 January 2011 "seeking to file for a motion for dismissal." The trial court responded, stating the following: "According to our records you are represented by an attorney. Please discuss your concerns with your attorney. You must act through your attorney when filing court documents." Almost a year later, Defendant filed a motion to dismiss and, purportedly, a concurrent motion to waive counsel,[2] in which Defendant stated that he "knowingly, voluntarily, and intelligently proceeds *pro se*." The trial court responded on 5 March 2012, again stating the following: "According to our court records you are represented by an attorney. Please discuss your concerns with your attorney. You must act through your attorney when filing court documents."

---

[2] Defense counsel states in his brief that "[u]ndersigned counsel went to Robeson County to review the Clerk's file twice . . . for the specific purpose of determining whether a separate, concurrently filed motion was in the file, and counsel could not locate one."

At trial, Defendant did not express a desire to proceed *pro se*, and the trial court did not conduct an inquiry. Despite repeated inquiries from the trial court as to whether there were any other matters before the jury came in, neither Defendant nor his court-appointed counsel informed the trial court that Defendant desired to waive in-court representation by counsel so that Defendant could proceed *pro se*. "Only if a defendant clearly expresses his desire to have counsel removed and to proceed *pro se* is the trial court obligated to make further inquiry pursuant to N.C.G.S. § 15A-1242 to determine if defendant understands the consequences of his decision and voluntarily and intelligently wishes to waive his right to the representation of counsel." *State v. Johnson*, 341 N.C. 104, 111, 459 S.E.2d 246, 250 (1995) (citation omitted). We believe the facts of this case – because there is no motion to waive counsel, only a reference to one, and because there was no mention at trial of Defendant's desire to proceed *pro se* – do not support the proposition that Defendant clearly expressed his desire to have counsel removed and to proceed *pro se*. As such, the trial court had no obligation to make further inquiry pursuant to N.C. Gen. Stat. § 15A-1242. This argument is without merit.

IV: Motion to Dismiss; Ineffective Assistance of Counsel

In Defendant's next arguments, he contends the trial court erred by denying his motion to dismiss the charges of attempted murder and assault with a deadly weapon with the intent to kill inflicting serious injury. Defendant admits that defense counsel failed to renew Defendant's motion to dismiss at the close of all evidence, but nonetheless argues the denial of Defendant's motion to dismiss was error, and further contends that defense counsel's failure to renew the motion was ineffective assistance of counsel.

Our appellate rules provide that, "if a defendant fails to move to dismiss the action or for judgment as in case of nonsuit at the close of all the evidence, he may not challenge on appeal the sufficiency of the evidence to prove the crime charged." N.C.R. App. P. 10(b)(3). Because Defendant presented his own evidence and failed to renew his motion to dismiss at the close of all evidence, Defendant waived his right to contest this issue on appeal. *Id.* The portion of Defendant's appeal pertaining to the trial court's denial of his motion to dismiss is, resultantly, dismissed. *See State v. Blackmon*, 208 N.C. App. 397, 400, 702 S.E.2d 833, 836 (2010); *State v. Tanner*, 193

N.C. App. 150, 666 S.E.2d 845 (2008), *rev'd on other grounds*, 364 N.C. 229, 695 S.E.2d 97 (2010).

Defendant also asserts that defense counsel's failure to renew the motion to dismiss at the end of all evidence constitutes ineffective assistance of counsel.

"To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense." *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286, *cert. denied*, 549 U.S. 867, 166 L. Ed. 2d 116 (2006) (citations and quotation marks omitted). "Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness." *Id.* "Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

"[I]f a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have

been different, then the court need not determine whether counsel's performance was actually deficient." *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 249 (1985). The issue in this case, therefore, turns on whether there was a reasonable probability the trial court would have ruled in Defendant's favor had defense counsel renewed the motion to dismiss at the conclusion of all evidence. We believe there was not.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455, *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000) (citation and quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

> Circumstantial evidence may withstand a
> motion to dismiss and support a conviction

> even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.

*Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455 (citation and quotation marks omitted). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

i: Attempted Murder

Defendant argues the trial court erred by denying his motion to dismiss the charges of attempted murder because there was neither insufficient evidence to support the element of premeditation and deliberation nor the element of intent to kill. We address each argument in turn.

"The elements of attempted first-degree murder are: (1) a specific intent to kill another; (2) an overt act calculated to carry out that intent, which goes beyond mere preparation; (3) malice, premeditation, and deliberation accompanying the act; and (4) failure to complete the intended killing." *State v. Tirado*, 358 N.C. 551, 579, 599 S.E.2d 515, 534 (2004); *see also* N.C. Gen. Stat. § 14-17 (2011).

### a: Premeditation and Deliberation

Defendant first argues there was insufficient evidence to support the element of premeditation and deliberation. "In the context of attempted first-degree murder, circumstances that may tend to prove premeditation and deliberation include, among others: (1) lack of provocation by the intended victim or victims; and (2) conduct and statements of the defendant both before and after the attempted killing." *State v. Reid*, 175 N.C. App. 613, 619, 625 S.E.2d 575, 582 (2006). "Premeditation and deliberation, both processes of the mind, must generally be proven by circumstantial evidence." *State v. Smith*, 357 N.C. 604, 616, 588 S.E.2d 453, 461 (2003), *cert. denied*, __ U.S. __, 159 L. Ed. 2d 819, 124 S. Ct. 2915 (2004); *see also State v. Cozart*, 131 N.C. App. 199, 202, 505 S.E.2d 906, 909 (1998) (stating that "[i]n the context of attempted first-degree

murder, circumstances that may tend to prove premeditation and deliberation include: (1) lack of provocation by the intended victim or victims; (2) conduct and statements of the defendant both before and after the attempted killing; (3) threats made against the intended victim or victims by the defendant; and (4) ill will or previous difficulty between the defendant and the intended victim or victims"). "The nature and number of the victim's wounds is . . . a circumstance from which an inference of premeditation and deliberation can be drawn." *State v. Bullard*, 312 N.C. 129, 161, 322 S.E.2d 370, 388 (1984). "Premeditation and deliberation may be inferred from the multiple shots fired by defendant." *State v. Chapman*, 359 N.C. 328, 376, 611 S.E.2d 794, 828 (2005). "[A] defendant's attempt to cover up his participation in the shooting by hiding the [gun] is evidence from which premeditation and deliberation may be inferred." *Id.* at 376, 611 S.E.2d at 829.

In this case, the evidence of record tends to show that Defendant worked with Ms. Neldon and Ms. Hardin at Zaxby's and knew when and where the night deposit was made. Evidence does not show that there was any ill will among Ms. Neldon, Ms. Hardin and Defendant prior to the shooting. Evidence further shows that Defendant was waiting in the bank parking lot after

1:00 A.M. with a gun on the night of the shooting; that Defendant reached through the shattered vehicle window to shoot Ms. Neldon at point blank range; and that Defendant fired four shots at Ms. Neldon and Ms. Hardin. Defendant attempted to hide his gun in the grass when he was arrested. We believe the evidence supporting the element of premeditation and deliberation in this case was substantial, such that the question of whether Defendant committed attempted first degree murder was properly one for the jury. We believe the evidence was such that the jury could have inferred from the circumstances that Defendant fired shots in a cool state of blood, planning to take the bank deposit. *See Chapman*, 359 N.C. at 377, 611 S.E.2d at 829.

### b: Specific Intent to Kill

Defendant next argues there was insufficient evidence to support the element of specific intent to kill.

Intent to kill is an element of both the crime of attempted first degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. *See Cozart*, 131 N.C. App. at 202, 505 S.E.2d at 909. "The requisite 'intent to kill' may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant

circumstances." *State v. Musselwhite*, 59 N.C. App. 477, 480, 297 S.E.2d 181, 184 (1982). In this case, we reiterate that Defendant reached through the shattered vehicle window to shoot Ms. Neldon at point blank range; and that Defendant fired four shots at Ms. Neldon and Ms. Hardin. One bullet struck Ms. Neldon in the abdomen, lodging in her spine, which resulted in the required removal of part of Ms. Neldon's lower intestine by doctors. Another bullet struck Ms. Hardin in the back, which resulted in the required removal of Ms. Hardin's left kidney, part of her lower intestine, and her spleen. We believe this evidence supporting the element of intent to kill was substantial, such that the question of whether Defendant committed attempted first degree murder was properly one for the jury. *See State v. Cain*, 79 N.C. App. 35, 47, 338 S.E.2d 898, 905, *disc. review denied*, 316 N.C. 380, 342 S.E.2d 899 (1986) (stating that "[t]he requisite 'intent to kill' can be reasonably inferred by the defendant's use of a .357 magnum revolver, fired numerous times"); *see also State v. Maddox*, 159 N.C. App. 127, 131, 583 S.E.2d 601, 604 (2003).

ii: Assault With Deadly Weapon With Intent to Kill Inflicting
Serious Injury

Defendant also argues the trial court erred by denying his motion to dismiss the charges of assault with a deadly weapon

with intent to kill inflicting serious injury because there was insufficient evidence to support the element of intent to kill. We disagree.

"The elements of assault with a deadly weapon with intent to kill inflicting serious injury are: (1) an assault, (2) with the use of a deadly weapon, (3) with an intent to kill, and (4) inflicting serious injury, not resulting in death." *State v. Tirado*, 358 N.C. 551, 579, 599 S.E.2d 515, 534 (2004); *see also* N.C. Gen. Stat. § 14-32(a) (2011). Intent to kill is an element of both the crime of attempted first degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. *See Cozart*, 131 N.C. App. at 202, 505 S.E.2d at 909 (1998).

Defendant again argues there was insufficient evidence to support the element of specific intent to kill. For the reasons discussed previously concerning whether there was substantial evidence to support the element of intent to kill in the context of attempted first degree murder, we disagree.

Based on the evidence, we believe there was no reasonable probability the trial court would have granted Defendant's motion to dismiss had he made one at the end of all evidence.

Therefore, Defendant's ineffective assistance of counsel claim must necessarily fail.

NO ERROR in part; DISMISSED in part.

Judge BRYANT and Judge STEPHENS concur.

Report per Rule 30(e).